_____

Nos. 95-3187/3259
_____

United States of America,            *
                                     *
      Appellee/Cross-Appellant,      *
                                     *   Appeal and Cross-Appeal from the
      v.                             *   United States District Court for
                                     *   the Northern District of Iowa.
Larry Risse,                         *
                                     *
      Appellant/Cross-Appellee.      *

_____

Submitted:  February 13, 1996

Filed:  May 6, 1996
_____

Before MAGILL, HEANEY, and MURPHY, Circuit Judges.

_____

MAGILL, Circuit Judge.


      Larry Risse appeals the district court's[1] determination that officers
of the Black Hawk County, Iowa, sheriff's department lawfully entered
Risse's home, either on their own authority or because Risse consented to
the entry, thus validating the officers' seizure of evidence later used at
trial against Risse.  The government cross-appeals the district court's
downward departure at sentencing based on Risse's diminished capacity
caused by posttraumatic stress disorder.  We affirm on both issues.

_____

      [1]The Honorable Michael J. Melloy, Chief Judge, United States
District Court for the Northern District of Iowa, adopting the
report and recommendation of the Honorable John A. Jarvey, Chief
United States Magistrate Judge for the Northern District of Iowa.

## I.

On February 11, 1992, deputy sheriff Larry Wessels and officer Richard Knief went to Risse's home at 3029 Huntington Road in Waterloo, Iowa, to execute an arrest warrant for Sandra Rhoads, Risse's girlfriend, for a controlled substance felony offense. The officers did not have an arrest warrant for Risse, nor did they have a search warrant for the Huntington Road residence.

When Risse opened the door to the residence, Wessels and Knief asked him if Rhoads was present. Risse motioned toward Rhoads and stated, "She's standing right there." Officer Wessels saw her through the open door and immediately recognized her. Wessels stepped into the house and pronounced her under arrest.

Wessels and Knief moved into the dining room to wait for Rhoads while she put on her coat and shoes. While there, both officers observed a small marijuana pipe and some marijuana inside an open buffet drawer in the dining room. In an attempt to conceal the pipe, Risse struggled with officers, and he was arrested for interference with official acts and for possession of the marijuana. Based on their observations in Risse's home, the officers obtained a search warrant for the residence. During the course of the search, they seized more marijuana, marijuana paraphernalia, several guns, two scales, and $1,197.15 in cash.

Risse moved to suppress this evidence, contending that the entry into his home without a search warrant violated his Fourth Amendment rights and that the later search warrant was invalid. The government contended that the arrest warrant for Rhoads provided the officers with authority to enter the Huntington Road residence or, alternatively, that Risse consented to the entry.

At the suppression hearing, officer Wessels testified that he believed that Rhoads lived at the Huntington Road residence.

-2-

Wessels testified that he contacted Rhoads at the Huntington Road residence in January 1992, in order to discuss a possible plea agreement in connection with a controlled substance offense. Later, when asked where she could be contacted, Rhoads responded that "she was staying with Larry Risse and that we could contact her at that location if we needed." Testimony of Officer Wessels, Tr. of Hr'g on Motion to Suppress, at 68. A confidential informant corroborated this information, telling Wessels that "Sandra [Rhoads] was living with Larry Risse." Id. at 86. Due to his extensive experience with this informant, Wessels considered this information reliable. Finally, just before effecting the arrest, Wessels contacted Rhoads at the Huntington Road residence, ensuring that she was in fact present at that address.

In support of its motion, the defense noted that Rhoads maintained a permanent residence on Knoll Street in Waterloo. The officers had actual knowledge of this, because Rhoads was renting the apartment from a deputy in the sheriff's office. Further, Wessels testified that Rhoads had given the Knoll Street address as her residence during a prior arrest. Finally, the power, electricity, and phone lines were in Rhoads' name at the Knoll Street residence and not at the Huntington Road residence, and Rhoads received all of her mail at Knoll Street.

The district court denied Risse's motion to suppress, concluding that Wessels had a reasonable belief that Rhoads resided on Huntington Road. Given this, the arrest warrant provided the officers with legal authority to enter the Huntington Road residence and seize the marijuana and pipe, which were in plain view. The court further determined that, even if officers did not have preexisting authority to enter the house, Risse consented to the entry.

Risse then entered a conditional plea to (1) use of a firearm during and in relation to a drug trafficking crime, in violation of

18 U.S.C. § 924(c), and (2) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  In the plea, the defendant reserved the right to appeal the denial of the motion to suppress.

At sentencing, the district court determined that Risse's final adjusted offense level on the felon in possession count was 23 and the criminal history category was III.  Risse presented evidence that he suffered from posttraumatic stress disorder resulting from his service in the Vietnam War, and the court departed downward from the sentencing range of 57 to 71 months and imposed a sentence of 18 months based upon "overrepresentation of [defendant's] criminal history and for [defendant's] diminished capacity."  The court imposed the mandatory minimum sixty-month consecutive sentence on the § 924(c) count.  Risse appeals the denial of the motion to suppress and the government cross-appeals the downward departure.

## II.

Whether the police officers possessed a reasonable belief that Rhoads resided on Huntington Road "is a mixed question of fact and law.  The findings with respect to the historical facts are reviewed under the clearly erroneous standard; the ultimate conclusion, however, is subject to de novo review."  United States v. Dixon, 51 F.3d 1376, 1381 (8th Cir. 1995) (quoting United States v. Campbell, 843 F.2d 1089, 1092 (8th Cir. 1988)).

At issue is whether the arrest warrant for Sandra Rhoads provided the police officers with legal authority to enter the Huntington Road residence, thereby validating the seizure of evidence that was in plain view.  We hold that it did.[2]

---

[2]The government also contended that Risse consented to the entry into his home.  Because we conclude that the arrest warrant provided officer Wessels with legal authority to enter the residence, see infra, we need not decide whether Risse's actions in motioning towards Rhoads constituted consent to the officers' entry into the home.

-4-

A valid arrest warrant carries with it the implicit but limited authority to enter the residence of the person named in the warrant in order to execute that warrant. See Payton v. New York, 445 U.S. 573, 603 (1980). However, absent exigent circumstances or consent, an arrest warrant does not justify entry into a third person's home to search for the subject of the arrest warrant. See Steagald v. United States, 451 U.S. 204, 215-16 (1981).

Thus, "if the suspect is just a guest of the third party, then the police must obtain a search warrant for the third party's dwelling in order to use evidence found against the third party." United States v. Litteral, 910 F.2d 547, 553 (9th Cir. 1990). However, "if the suspect is a co-resident of the third party, then Steagald does not apply, and Payton allows both arrest of the subject of the arrest warrant and use of evidence found against the third party." Id.; see also Washington v. Simpson, 806 F.2d 192, 196 (8th Cir. 1986) (when subject of arrest warrant is co-resident with third party, officers may enter residence of the third party without search warrant).[3]

---

[3]Undergirding the rule set forth in Litteral and Simpson is the notion that where a homeowner allows another person to possess common authority over, or some other significant relationship to, the premises to be searched, the homeowner is held to have a lower expectation of privacy in the searched area. United States v. Matlock, 415 U.S. 164, 171 (1974).

This lowered expectation of privacy results from the "mutual use of the property by persons generally having joint access or control for most purposes"; therefore, "it is reasonable to recognize that any one of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." Id. at 171 n.7.

There is no reasonable expectation of privacy in such a situation because the person's privacy "[is] contingent in large measure on the decisions of another. Decisions of either person define the extent of the privacy involved, a principle that does not depend on whether the stranger welcomed into the house turns out to be an agent or another drug dealer." United States v. Chaidez, 919 F.2d 1193, 1202 (7th Cir. 1990), cert. denied, 502 U.S. 872 (1991); see also J.L. Foti Constr. Co. v. Donovan, 786

Under Payton, officers executing an arrest warrant must have a "reasonable belief that the suspect resides at the place to be entered . . . and [have] reason to believe that the suspect is present" at the time the warrant is executed.  United States v. Lauter, 57 F.3d 212, 215 (2d Cir. 1995); see also United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir.) (same), cert. denied, 116 S. Ct. 189 (1995); Perez v. Simmons, 998 F.2d 775, 776 (9th Cir. 1993) (same).  As indicated, the officers' assessment need not in fact be correct; rather, they need only "reasonably believe" that

---

F.2d 714, 717 (6th Cir. 1986) (because the "joint occupant assumes the risk of his co-occupant exposing their common private areas to such a search . . . there is no reasonable expectation of privacy to be protected").

Although Matlock is a third-party-consent-to-search case, we find its reasoning equally applicable in the Steagald context. Where the subject of the arrest warrant is merely a guest of the homeowner, there is no "common authority" over the premises to be searched, and thus "[i]t is unlikely [the homeowner's] expectation [of privacy] was lowered substantially." Perez v. Simmons, 884 F.2d 1136, 1140 (9th Cir. 1989), modified at 900 F.2d 213 (9th Cir. 1990), corrected at 998 F.2d 775 (9th Cir. 1993); see also id. at 1141 ("The Fourth Amendment's protection against unreasonable searches in a person's home is not diminished by the mere presence of a guest in the home.").  To protect the homeowner's privacy interest, a search warrant is needed to enter the house.

Where, however, the third party is not a guest but rather is a joint occupant of the residence, then the homeowner should be deemed to have limited her expectation of privacy in the premises. Because the "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place," Rakas v. Illinois, 439 U.S. 128, 143 (1978), the homeowner in such a situation has voluntarily limited her Fourth Amendment protection. See Illinois v. Rodriguez, 497 U.S. 177, 190 (1990) (Marshall, J., dissenting) (citations omitted) (noting that co-occupant has "voluntarily limit[ed] his expectation of privacy by allowing others to exercise authority over his possessions . . . and to that extent [has limited] his Fourth Amendment protections").

-6-

the suspect resides at the dwelling to be searched and is currently present at the dwelling.  See Magluta, 44 F.3d at 1533-36; Bratton v. Toboz, 764 F. Supp. 965, 972 (M.D. Pa. 1991) ("Toboz's belief that Lowery was residing at the Westport home, although not in fact correct, was reasonable.").

Much evidence exists to support the officers' belief that Rhoads resided on Huntington Road.  Rhoads herself told officers that she was "staying with" Risse and that officers could contact her at Risse's home. Officer Wessels testified that he interpreted the use of the colloquial term "staying with" to mean that Rhoads was in fact living with Risse, and the district court credited this testimony.  This assessment was further bolstered by a confidential informant considered reliable by Wessels, who told Wessels that "Sandra [Rhoads] was living with Larry Risse."  Finally, while police officers twice successfully contacted Rhoads at the Huntington Road residence, they were unable to contact her when they called upon her at the Knoll Street address, suggesting that Rhoads was living at the Huntington Road residence.

Based on the evidence presented, it is clear that Wessels' belief that Rhoads resided on Huntington Road was, as a matter of law, reasonable, and thus the officers could enter the residence armed only with an arrest warrant for Rhoads.  See Simpson, 806 F.2d at 196 (suspect "resided" at house when she stayed there two to four nights per week, kept certain personal belongings there, and gave that address as residence when booked by police); see also Lauter, 57 F.3d at 215-16 (entry permissible when police received tip from confidential informant that suspect residing in new apartment); Bratton, 764 F. Supp. at 972 ("[T]he volume of anonymous tips and the fact of Karen Bratton's close relationship with the Lowerys rendered [the belief that Lowery resided with Bratton] reasonable.").

In so holding, we reject Risse's contention that, because the

officers knew, or should have known, that Rhoads maintained a permanent residence on Knoll Street, they could not have reasonably believed that Rhoads resided on Huntington Road. We have found no authority to support Risse's implicit assumption that a person can have only one residence for Fourth Amendment purposes. Rather, when evaluating Risse's expectation of privacy in his home, we are guided by the principle that, so long as Rhoads possesses common authority over, or some other significant relationship to, the Huntington Road residence, see supra note 3, that dwelling "can certainly be considered [her] 'home' for Fourth Amendment purposes, even if the premises are owned by a third party and others are living there, and even if [Rhoads] concurrently maintains a residence elsewhere as well." Steagald, 451 U.S. at 230-31 (Rehnquist, J., dissenting).

Officer Wessels also possessed a reasonable belief that Rhoads was present at the Huntington Road residence when he executed the warrant. Shortly before he approached the residence, officer Wessels called the house to confirm that Rhoads was in fact present. This goes far beyond what is needed to satisfy this requirement. See, e.g., Lauter, 57 F.3d at 215 (belief that suspect currently present at dwelling was reasonable because officer knew that suspect was unemployed and typically slept late).

Because Wessels possessed a reasonable belief that Rhoads resided at Huntington Road and that Rhoads was present at the time the warrant was executed, Wessels possessed legal authority to enter the residence pursuant to the valid arrest warrant. Thus, the seizure of evidence in plain view was valid, and the resulting search warrant was supported by probable cause.

**III.**

The government cross-appeals the district court's downward departure at sentencing based on diminished capacity. This Court

will affirm a downward departure if: (1) the circumstances on which the district court based its decision to depart are sufficient as a matter of law to justify a departure; (2) the factual findings of the district court were not clearly erroneous; and (3) the degree of departure was reasonable, giving due deference to the district court.  See United States v. Groene, 998 F.2d 604, 607 (8th Cir. 1993), cert. denied, 114 S. Ct. 881 (1994).

The district court had legal authority to depart in this case under U.S.S.G. § 5K2.13, p.s. (1994) (diminished capacity).  Because the district court's factual findings were not clearly erroneous and the degree of departure is reasonable, we affirm the departure.

**IV.**

Because officers Wessels and Knief had legal authority based on the arrest warrant to enter the Risse residence, thereby validating the seizure of evidence in plain view, and because the district court permissibly departed downward at sentencing, the district court is affirmed.[4]

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]Risse has also moved to have his 18 U.S.C. § 924(c) conviction dismissed due to problems with the indictment.  This argument was raised for the first time thirty-four days after oral argument.  We reject the motion because it was not timely filed.