Taisha CLAYTON, Plaintiff,

v.

CITY OF KINGSTON; City of Kingston Police Department; Detective Matthews of the Kingston Police Department; and "John Doe," "Richard Doe," and others of the Kingston Police Department, Defendants.

No. 97–CV–1563.

United States District Court, N.D. New York.

April 23, 1999.

Office of Noel Tepper, Poughkeepsie, New York, for plaintiff, Noel Tepper, of counsel.

Cook, Tucker, Netter & Cloonan, P.C., Kingston, New York, for defendants, Robert D. Cook, of counsel.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Taisha Clayton ("plaintiff") brought the instant action on April 10, 1997, pursuant to 42 U.S.C. § 1983 against the City of Kingston, the City of Kingston Police Department ("Kingston Police Department"), Detective Matthews ("Matthews"), and various unnamed employees of the Police Department, alleging a violation of her Fourth Amendment rights based on the officers' entering her apartment without a search warrant to execute an arrest warrant for an individual named Yves Francois ("Francois"), who the police "were told was staying at the apartment

with [plaintiff's] boyfriend, Omar Finch ("Finch")". Pl. Mem. of Law at 2. In response, defendants argue that they lawfully entered plaintiff's apartment based on a valid arrest warrant for Francois, who they believed resided at plaintiff's apartment based on reliable information provided by a confidential informant earlier that day. *See* Defts. Mem. of Law at 2. Thus, defendant police officers contend that because their actions were objectively reasonable, they are entitled to qualified immunity. Defendant City of Kingston further argues that plaintiff has failed to establish a *Monell* claim based on the allegations set forth in her Complaint. Presently before the Court is defendants' motion for summary judgment pursuant to FED.R.CIV.P. 56.

## I. Background

Plaintiff has failed to submit a Statement of Material Facts in accordance with Local Rule 7.1(a)(3) which requires numbered paragraphs detailing the material *facts* as to which it is contended that there exists a genuine issue, with "specific citation[s] to the record where the factual issue arises."[1] Accordingly, all material facts set forth in defendants' Rule 7.1(a)(3) statement are deemed admitted. *See* N.D.N.Y. LOCAL R. 7.1(a)(3); *DeMar v. Car–Freshner Corp.*, 1999 WL 34973, at *1 (N.D.N.Y. Jan.14, 1999); *Costello v. Norton*, 1998 WL 743710, at *1 n. 2 (N.D.N.Y. Oct.21, 1998).

On January 21, 1997, defendant Matthews and other officers of the Kingston Police Department received information from a confidential informant that he and another individual were attempting to purchase drugs from Finch and Francois. Although Matthews did not personally deal with the informant in the past, he knew his identity and that he had previously provided another officer, Detective Schatzel, with reliable information. Detective Schatzel

1. The 7.1(a)(3) Statement submitted by plaintiff fails to set forth specific facts or citations to the record; rather, it summarizes the issues before the Court by broadly stating four questions for which plaintiff "there exists a genuine issue [of fact]." Pl. 7.1 Stmt. at 1.

told Matthews that he had arranged for the informant and the other individual to purchase drugs from Finch and Francois later that day at a park some three blocks from plaintiff's apartment. Matthews, Schatzel and other officers maintained surveillance of the park and the confidential informant.

When Finch and Francois failed to appear, the officers met with the informant in an area near the park. Matthews stated that the informant then told him and the officers that:

> it didn't look like [Finch and Francois] were going to show up, but he knew where—*he knew where they were living and he could go to their house and find out what was going on.*

Dep. of Timothy Matthews (hereinafter "Matthews Dep."), at 23–24 (emphasis added).

The informant indicated that both Finch and Francois were living at 65 West Union Street. Matthews, Schatzel and other officers then accompanied the informant and the other individual by car to that location. It does not appear that the officers were aware that plaintiff also resided at that location.

When the parties reached 65 West Union Street, the other individual exited the car and started to converse with a person who Matthews later identified as Finch. The informant then met, and drove off with a third person, identified as Boller, who was "a street person ... not with law enforcement," Matthews Dep. at 35, who previously sold drugs for Francois and allowed Francois to stay in his apartment. *See id.* at 38. Shortly thereafter, the officers, informant and other individual met near the police station. In recounting their discussion, Matthews stated that:

> the subject stated to us that Omar [Finch] had told him that the block was hot, meaning the cops were on the block. At that point there was nothing going on, to come back at a later point in time. And that the third subject then also told

us that he looked up and standing just next to Omar [Finch] was ... Francois. Matthews Dep. at 37.

After questioning the informant and other individual as to how they knew the individual with Finch was indeed Francois, they told the officers that "[w]e both know [Francois] and he's *staying there* with Omar Finch in the apartment." Matthews Dep. at 41 (emphasis added). Armed with a valid arrest warrant for Francois, Matthews and other officers decided to return to 65 West Union Street to arrest Francois.

Upon arriving at that location, the police officers entered the apartment building and proceeded to the third floor. At that point, the officers entered the apartment, where plaintiff resided, with their weapons drawn and directed all the occupants to lie down on the floor while they searched for Francois. After determining that Francois was not present, the officers questioned plaintiff and left.

Plaintiff, apparently pregnant at that time, alleges that the officers entered her apartment without a valid search warrant and "aimed guns at [her]; ordered her to lay down on the floor; referred to her in rude and obscene terms; threatened her; questioned her; refused to allow her to put on clothes over her underwear; ridiculed the fact she was crying; searched her apartment; and left her clothes and personal belongings in disarray." Compl. at ¶ 9. Plaintiff seeks monetary damages resulting from mental and physical pain occasioned by the officers' alleged illegal search of her apartment.

## II. Discussion

### A. The Standard for Summary Judgment

The standard for summary judgment is well-settled. Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead

a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 86 (1996). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED. R.CIV.P. 56(c)). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Matsushita*, 475 U.S. at 585–86, 106 S.Ct. 1348. A dispute regarding a material fact is genuine if a reasonable jury could return a verdict for the non-moving party; that is, whether the non-movant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds, however, could not differ as to the import of the evidence, then summary judgment is proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Although the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Eastway Constr. Corp. v. City*

*of New York*, 762 F.2d 243, 249 (2d Cir. 1985) *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), the motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Delaware & H.R. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).

## B. Plaintiff's Section 1983 Claim
### 1. Qualified Immunity

Plaintiff claims that defendants are liable for civil damages for conducting a warrantless search of her home.[2] Relying on the Supreme Court's holding in *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), plaintiff argues that defendant police officers needed a separate search warrant to enter and search plaintiff's apartment because she was a third party not named in the arrest warrant. *See* Pl. Mem. of Law at 3–4. In response, defendants do not address whether plaintiff has established a prima facie case under the Fourth Amendment; rather, they argue that Matthews and the other unnamed officers are entitled to qualified · immunity because they "were provided with reliable information that the subject of their arrest warrant [Francois] resided at 65 West Union Street...." Defts. Mem. of Law at 4. Thus, the narrow issue before the Court is whether the decision of Matthews and the other police officers to enter and search plaintiff's apartment based solely on a valid arrest

---

**2.** Because plaintiff's claims are based solely on an alleged illegal search of her apartment which is properly addressed under the Fourth Amendment, her claims under the First, Sixth, and Fourteenth Amendment are dismissed.

warrant naming Francois was objectively reasonable under the circumstances.[3]

"The qualified immunity doctrine shields 'government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lewis v. Cowen,* 165 F.3d 154, 166 (2d Cir.1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *see also Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "'[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken.'" *Lewis,* 165 F.3d at 166 (quoting *Anderson,* 483 U.S. at 639, 107 S.Ct. 3034).

■ Overcoming qualified immunity entails a two-part process: "First, a plaintiff must allege the violation of a clearly established constitutional or statutory right. Second, qualified immunity will be denied only if a reasonable official should have known that the challenged conduct violated that established right." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999); *see also Harlow,* 457 U.S. at 818, 102 S.Ct. 2727. A defendant is entitled to qualified immunity on a motion to dismiss if the allegations of the complaint fail to "state a claim of violation of clearly established law." *See Connell v. Signoracci,* 153 F.3d 74, 80 (2d Cir.1998). "'The objective reasonableness test is met—and the defendant is

entitled to immunity—if officers of reasonable competence could disagree on the legality of the defendant's actions.'" *Thomas,* 165 F.3d at 143 (quoting *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995)). After carefully reviewing the record, and the totality of the information possessed by the defendant police officers, the Court finds that the officers are entitled to qualified immunity.

In *United States v. Lovelock,* the Second Circuit recently summarized the constitutional requirements regarding entry into a person's home to execute an arrest warrant:

> [I]n order to authorize entry into a person's home to execute a warrant for his arrest, the officers' belief that the residence to be entered is the home of the person named in the warrant need not be supported by "probable cause." Rather, "the proper inquiry is whether there is a reasonable belief that the suspect resides at the place to be entered to execute [the] warrant, and whether the officers have reason to believe that the suspect is present."

170 F.3d 339, 343 (2d Cir.1999) (quoting *United States v. Lauter,* 57 F.3d 212, 215 (2d Cir.1995)).

The Fourth Amendment does not bar all searches of a person's home; rather, it requires that no search will occur that is unreasonable. *See Lovelock,* 170 F.3d at 344. Thus, "the constitutional requirement is that [the officers] have a basis for a reasonable belief as to the operative facts, not that they acquire all available information or that those facts exist." *Id.* (citing *Illinois v. Rodriguez,* 497 U.S. 177, 183, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)).

County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998)). In the present case, however, defendants do not address the elements of plaintiff's prima facie claim; rather they argue that Matthews and the unnamed officers are entitled to qualified immunity. Thus, the Court will assume, solely for the purposes of defendants' motion, that plaintiff has suffered a constitutional injury.

---

3. The Second Circuit has held that "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *See Stuto v. Fleishman,* 164 F.3d 820, 825 (2d Cir.1999) (citing

While police officers are permitted to enter the residence of the suspect named in the arrest warrant, see *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), it "does not authorize entry into a residence in which the officers do not believe the suspect is residing but believe ·he is merely *visiting.*" *Lovelock*, 170 F.3d at 344 (citing *Steagald*, 451 U.S. at 213–14, 101 S.Ct. 1642). Thus, the question is whether it was objectively reasonable for the officers to believe Francois was more like a resident than a visitor/guest in plaintiff's apartment.

Plaintiff argues that Francois did not reside in her apartment and, therefore, the officers required a search warrant to enter her apartment. *See Steagald*, 451 U.S. at 213–14, n. 7, 101 S.Ct. 1642 (holding that absent exigent circumstances, police must obtain a valid search warrant "when the police seek to use an arrest warrant as legal authority to enter the home of a third party to conduct a search."). In making this argument, plaintiff asks this court to find a distinction between "residing with" and "staying with" sufficient to render the officers' search of plaintiff's apartment objectively unreasonable. Plaintiff acknowledges, however, that the deposition, interrogatories and police reports provided by the police officers indicate that the officers believed Francois was "staying with" Finch at plaintiff's apartment. *See* Matthews Dep. at 23, 41; Affirmation of Attorney Noel Tepper, Ex. I (Special Report of officer Hossack and Supplementary Report of Officer Schatzel). Defendants contend that they "were provided with information from reliable confidential informants that the subject of their arrest warrant resided at plaintiff's apartment [and][a]t the very least, the officers believed that [Francois] was staying

at the plaintiff's apartment." Defts. Reply Aff. at ¶ 4. The informant working with the officers in this case had provided reliable information to Officer Schatzel in the past.[4] *See* Matthews Dep. at 17–18.

In *Lovelock*, the Second Circuit addressed the issue of whether the use of the word "stays" is reasonably interpreted to mean that the suspect, here Francois, resided or lived at plaintiff's residence:

> "We reject [plaintiff's] argument that the ... use of the word "stays," in responding to the question whether [the suspect] resided at [plaintiff's residence], was either unresponsive or too ambiguous to permit reasonable reliance. The colloquial use of that word is consistent with "resides"...."

170 F.3d at 344; *see also United States v. Risse*, 83 F.3d 212, 216 (8th Cir.1996) (stating that the phrases "staying with" and "living with" are sufficient to support police officers' belief that the suspect resided at the location at issue).

In contrast to the guest/visitor scenario envisioned in Steagald, here, the officers reasonably relied on information supplied by a confidential informant and entered an apartment in which they had a reasonable belief that Francois was residing. Accordingly, defendant police officers are entitled to qualified immunity for their actions in connection with the search of plaintiff's apartment. *See, e.g., Lovelock*, 170 F.3d at 343–44; *United States v. Junkman*, 160 F.3d 1191, 1193–94 (8th Cir.1998); *Risse*, 83 F.3d at 216–17; *Lauter*, 57 F.3d at 215.

The Complaint must also be dismissed against the individual unnamed police officers. Although this case has been pending for approximately one and a half years, plaintiff has not identified the "John Doe"

---

4. Plaintiff does not allege specific facts to support her contention that the officers did not have a basis to believe that the information provided by the informants was unreliable. Rather, she simply alleges, in a broad and conclusory manner that "there is no affidavit or factual basis by which this Court could determine that the informant or the

source of the police's information regarding Mr. Francois was reliable." Pl. Mem. of Law at 5. Such conclusory statements are insufficient to oppose a motion for summary judgment. *See Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996); *BellSouth Telecommunications, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.1996).

and "Richard Doe" defendants at the Kingston Police Department. Given that the time to amend her Complaint has passed,[5] the Court dismisses plaintiff's claims against the "John Doe," "Richard Doe" and "others of the City of Kingston Police Department" for failure to prosecute. *See Brown v. Middaugh*, 41 F.Supp.2d 172, 194 (N.D.N.Y.1999) (citing N.D.N.Y. LOCAL RULE 41.2(a)).

## 2. Kingston Police Department

Plaintiff also names the Kingston Police Department as a defendant in her Complaint.

██ Because a police department is an administrative arm of the city, which is a municipality, "[the] police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F.Supp.2d 192, 197 (N.D.N.Y.1999); *see also Loria v. Town of Irondequoit*, 775 F.Supp. 599, 606 (W.D.N.Y.1990). Accordingly, the motion to dismiss defendant Kingston Police Department is granted.

## 3. City of Kingston

Recognizing that not every decision by a municipal employee automatically imposes liability on the municipality, courts have disallowed claims under section 1983 on a respondeat superior theory. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611. Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. 2018. Because *Monell* and its progeny focus on responsibility for alleged wrongs, municipal liability does not

attach unless the municipality's policies are the "moving force" behind the constitutional violations. *Board of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

██ The courts have articulated guidelines under which municipal liability may be imposed. These include: (1) an officially promulgated policy sanctioned or ordered by the municipality, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Monell*, 436 U.S. at 690, 98 S.Ct. 2018; (2) a pervasive custom or practice approved of by the municipality or which the municipality is aware or should be aware, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 130, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Monell*, 436 U.S. at 690, 98 S.Ct. 2018; (3) a single act taken by the municipal employee who, as a matter of state law, has final policymaking authority with respect to the area in which the action is taken, *see McMillian v. Monroe County*, 520 U.S. 781, 784, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); *Praprotnik*, 485 U.S. at 129–30, 108 S.Ct. 915; *Pembaur*, 475 U.S. at 480–83, 106 S.Ct. 1292; or (4) where the failure of the municipality to train its employees rises to the level of deliberate indifference to the constitutional rights of others, *see City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir.1992), *cert. denied*, 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). The plaintiff in a section 1983 claim bears the burden of establishing municipal liability. *See Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir.1985), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987); *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir.1979),

---

**5.** The Uniform Pretrial Scheduling Order states that any application to amend the pleadings was required to made by June 1, 1998. Now, almost one year later, plaintiff has still not named the "John Doe" and "Richard Doe" police officer defendants.

*cert. denied,* 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980).

 Plaintiff's Complaint does not allege, and the evidence does not establish any official policy, see *Monell,* 436 U.S. at 689, 98 S.Ct. 2018, or approved custom or practice, see *Board of County Comm'rs,* 520 U.S. at 403, 117 S.Ct. 1382; *Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915, of the Kingston Police Department or the City of Kingston that caused the alleged violation of plaintiff's constitutional rights. Furthermore, it cannot be said that, under the circumstances of this case, Matthews or the other police officers were final policymakers. In assessing whether a municipal official possesses final policymaking authority in a given area, the critical distinction "is between the establishment of policy and the exercise of discretion in enforcing existing policy." 1B Schwartz & Kirklin, Section 1983 Litigation: Claims and Defenses at § 7.15. A municipal official that exercises discretion, whether it be in a constitutional or unconstitutional manner, in an area in which that official is not the final policymaker, cannot, by itself, establish municipal liability. *See Praprotnik,* 485 U.S. at 139–40, 108 S.Ct. 915 (Brennan, J., concurring); *Pembaur,* 475 U.S. at 481–82, 106 S.Ct. 1292; *Kaufman v. City of New York,* 1992 WL 247039, at *3 (S.D.N.Y. Sept.17, 1992) ("[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to ensure the official's conduct for conformance with their policies."). Accordingly, plaintiffs must demonstrate that Matthews and the other police officers were acting as the final policymakers, and not merely exercising their discretion, in that aspect of municipal policy that caused the alleged constitutional deprivation.

Here, there is no evidence that Matthews and the other police officers were final policymakers in deciding to search plaintiff's apartment pursuant to a valid arrest warrant for Francois, who they believed was staying at plaintiff's apartment.

Rather, the officers merely exercised discretion under existing policy established by the police department. Moreover, plaintiff fails to establish, as a matter of law, that Matthews and the other police officers were acting in an area of municipal policy in which they were charged with final policymaking authority under applicable state or county law. *See Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915 ("When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality."). Thus, the single incident here by employees below the policymaking level does not suffice to support an inference of municipal custom or policy. *See Tuttle,* 471 U.S. at 823, 105 S.Ct. 2427; *Pembaur,* 475 U.S. at 484 n. 12, 106 S.Ct. 1292; *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir.1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."); *Kaufman,* 1992 WL 247039, at * 3. Accordingly, the City of Kingston's motion to dismiss the Complaint is granted.

## III. CONCLUSION:

For all of the foregoing reasons, defendants' motion for summary judgment is **GRANTED,** dismissing plaintiff's Complaint in its entirety.

**IT IS SO ORDERED.**