Jim Hannah, Chief Justice, concurring. I agree with the disposition in this case. I write separately to clarify the law that should be applied in cases involving alleged Payton violations, to state my analysis of the issues on appeal, and to address errors contained in the majority opinion. On appeal, Evans challenges the circuit court’s denial of his motion to suppress evidence seized from his motel room. He claims that the evidence should have been suppressed because it was obtained after a Payton violation. In Payton v. New York, 445 U.S. 578, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court of the United States held that, “for Fourth Amendment purposes, an arrest warrant founded on probable cause[1] implicitly carries with | git the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.” Pursuant to Payton, officers executing an arrest warrant at a residence[2] must have (1) a reasonable belief that the suspect resides at the place to be entered and (2) reason to believe that the suspect is present at the time the warrant is executed. United States v. Risse, 83 F.3d 212, 216 (8th Cir.1996); see also Benavidez v. State, 352 Ark. 374, 379-80, 101 S.W.3d 242, 246-47 (2003) (applying Payton analysis); Gutierrez v. State, 2012 Ark. App. 628, at 6-7, 2012 WL 5439949 (same). In this case, the officers executing the warrant received an anonymous tip that Evans was in room 123 at Americas Best Value Inn on JFK Boulevard in North Little Rock. In my view, under the facts of this case, the anonymous tip was not sufficient to support a reasonable belief that Evans resided in room 123 of the motel, nor did it provide sufficient reason to believe that Evans was present in the motel room when police officers executed the warrant. Thus, I agree with the majority’s holding that the circuit court erred in denying Evans’s motion to suppress. I write separately on this issue because I believe that the analysis of the suppression issue should conclude with the application of Payton to the facts of this case. The majority goes further, however, and cites to Navarette v. California, — U.S. -, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014), a case in which the Supreme Court of the United States recognized that an uncorroborated |inanonymous tip can demonstrate sufficient indicia of reliability to provide reasonable suspicion to make a traffic stop. In doing so, the majority either fails to understand or declines to acknowledge that Navarette is legally distinguishable from the instant case. Na-varette, a traffic-stop case, applied the “reasonable suspicion” standard discussed in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The “reasonable belief’ or “reason to believe” standard announced in Payton must be applied in the instant case. Because the majority’s reference to Navarette will likely cause confusion, it should not be included in the opinion. I also agree with the majority that the circuit court’s error in denying Evans’s motion to suppress was harmless error; I write separately to state my analysis of the issue and to flesh out the facts and arguments the majority fails to mention. The denial of a motion to suppress can be harmless error when the evidence of guilt is overwhelming and the error is slight, or this court concludes beyond a reasonable doubt that the error did not contribute to the verdict. E.g., Livingston v. State, 2013 Ark. 264, at 8, 428 S.W.3d 474, 479. To apply this doctrine, the appellate court must excise the improper evidence and examine the remaining evidence. Id., 428 S.W.3d at 479. Even if the evidence seized from Evans’s motel room is excluded,[3] there is ample 1 n evidence to sustain the State’s convictions for aggravated robbery and theft of property. A person commits aggravated robbery if, with the purpose of committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person and is armed with a deadly weapon or represents by word or conduct that he or she is armed with a deadly weapon. See Ark.Code Ann. §§ 5-12-102 to - 103(a)(1), (2) (Repl. 2013). A person commits theft of property if he or she knowingly takes or exercises unauthorized control over property of another person with the purpose of depriving the owner of the property or obtains the property of another person by deception or by threat with the purpose of depriving the owner of the property. See id. § 5-36-103(a)(l), (2). The record reflects that, on February 22, 2013, after being buzzed into the bank, Evans approached Garianne Smith, an employee working at the teller window, handed her a note and said, “Just do what it says.” The note said, “Give me all the money starting with the biggest bills to the smallest. No die packs, GPS devices. Your cooperation depends on all of your safety.” Smith said that Evans raised his shirt just enough to show his left hand in his pants pocket on what Smith believed to be a weapon. Smith testified that she was very scared and wondered if he was going to shoot everyone in the bank. She then placed money in a bag and gave it to Evans. Sarah Lane was also working at Simmons Bank at the time of the robbery. She said that she saw Evans approach the door and that he “just seemed out of place.” Evans then |12entered the bank and walked to the teller lane and was out of Lane’s sight. Lane said that when he got to the door to leave the bank, he pushed the door, but it would not open because it was “mag locked.” Lane said that he turned to his left and looked at her, giving her a look that she called “alarming” and “stern.” The door then released, and according to Lane, Evans “bolted,” and then she heard Smith yelling, “Lock the doors. Lock the doors. We’ve just been robbed.” Lane said that Smith was visibly shaking and “white as a ghost” after the robbery. From a photo spread, both Smith and Lane identified Evans as the person who had robbed the bank. Smith and Lane also made in-court identifications of Evans. Evans’s brother-in-law also identified Evans in court. Martin testified that, after seeing still pictures from the robbery on the news, he contacted police and informed them that the person in the pictures was his brother-in-law, Isaac Evans. In light of the overwhelming evidence presented of Evans’s guilt, I agree with the majority that the circuit court’s error in denying Evans’s motion to suppress was harmless beyond a reasonable doubt. Therefore, I would affirm his convictions for aggravated robbery and theft of property. Danielson, J., joins. . Evans does not argue that the outstanding warrant for his arrest was invalid. . The State concedes that, in this case, the motel room was the equivalent of Evans’s residence for Fourth Amendment purposes. See Scroggins v. State, 276 Ark. 177, 182, 633 S.W.2d 33, 37 (1982) ("[I]t does not matter that a hotel or motel room is not a permanent residence; one registered at a motel or hotel as a guest is protected against unreasonable searches and seizures by the fourth amendment to the United States Constitution.”). . Photographs of Evans’s personal property that police officers seized from his motel room when they arrested him were introduced into evidence as State's Exhibits Nos. 36-39. Evans claims that he was prejudiced by the admission of Exhibit No. 36, a photograph showing a pair of jeans with the label "COOGI” on the back pocket, because it corroborated witness Sarah Lane's identification of him. He also challenges the admission of Exhibit No. 37, a photograph of an Arkansas nondriver's identification card issued to Evans on the same day as the robbery, and Exhibit No. 39, a photograph showing an electric hair trimmer. Evans claims that the admission of these exhibits was prejudicial because they helped the State prove that he had tried to change his appearance after the robbery to evade identification and because they allowed the jury to infer that he was conscious of his guilt.