*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1621**

State of Minnesota,
Respondent,

vs.

Wallace Owens,
Appellant.

**Filed December 7, 2015
Affirmed
Peterson, Judge**

Hennepin County District Court
File No. 27-CR-14-890

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Brittany D. Lawonn, Linda K. Jenny, Assistant County Attorneys, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Peterson, Judge; and Stauber, Judge.

**U N P U B L I S H E D   O P I N I O N**

PETERSON, Judge

In this appeal from a conviction of possession of a firearm by a prohibited person,

appellant (1) challenges the denial of his motion to suppress evidence and (2) argues that

the evidence presented at trial was insufficient for the jury to find that he constructively possessed a handgun. We affirm.

## FACTS

In January 2014, Hennepin County Sheriff's Deputies Marshall and Sundberg executed a warrant for the arrest of appellant Wallace Owens. Court records showed that in August and November 2013, Owens provided an address on Lowry Avenue as his address. Records also showed that Owens had used an address on Washburn Avenue, but the deputies learned that new tenants lived at the Washburn address.

The deputies went to the Lowry Avenue address and listened at the door to the apartment at that address. They heard a male and a female speaking inside the apartment. Marshall knocked on the door, and N.W. answered. According to Marshall, when N.W. was asked whether Owens was inside the apartment, "she turned, quickly looked back over her shoulder, turned back towards [the deputies] with her mouth hanging open and a blank stare on her face like she didn't know what to say." Sundberg also testified that N.W. "looked over her left shoulder towards the bedroom and looked back at us with kind of a blank stare, mouth open, and did not have a response." "Based on the totality of what we knew and what [N.W.] did at that time," Marshall believed that Owens was inside the apartment, and he pushed the door further open without N.W.'s consent.

The deputies were familiar with Owens's appearance, and they saw him in the bedroom sitting on the side of the bed. The deputies entered the apartment without consent and arrested Owens. At the time of the arrest, Sundberg did a "brief protective

sweep" of the bedroom and "could see in plain view under . . . an open nightstand, that there was a Mason jar that appeared to have marijuana in it."

Based on Sundberg's observation of a suspected felony amount of marijuana, law enforcement obtained and executed a search warrant for the apartment that same day. In addition to finding marijuana, law enforcement discovered a loaded handgun under the mattress in the bedroom. Owens had a previous felony conviction, and he was charged with possession of a firearm by a prohibited person.

At a *Rasmussen* hearing, Owens argued that the arrest warrant was improperly executed and moved to suppress the evidence against him. The district court heard testimony from Marshall, Sundberg, and N.W. and then, in a ruling from the bench, denied Owens's motion to suppress evidence, stating:

> There's more than enough evidence to believe the [deputies] had reason to believe that [Owens] was staying at [the Lowry Avenue] address. . . . [H]e, by his own admissions, he had listed that address in August of 2013 and November of 2013, so the [deputies] did their due diligence to try to find out where he was living. He apparently used two different addresses: one of them was on Washburn and the other one was this address on Lowry. The [deputies] checked the Washburn one and he obviously wasn't there, so they checked the only other one that he himself apparently had listed on two different occasions fairly recently, and that was the one on Lowry.
>
> So the [deputies] . . . didn't just barge in, they knocked, they told the person why they were there, they asked her some questions. And what she did made them even more suspicious, or kind of confirmed their suspicion that he was in fact staying there. So they certainly had a right. They would have had a right to go in anyway, even without the contact at the door, but that just gives them even more belief,

3

reasonable belief that he was staying there. And, of course, he was.

So I do think the [deputies] had sufficient evidence to enter that residence and to arrest [Owens].

The district court also determined that the subsequent search warrant, search of the apartment, and discovery of the handgun were lawful due to the observation of marijuana in plain view during the execution of the arrest warrant.

At the jury trial that followed, Marshall testified that the Lowry Avenue apartment was leased by N.W., Owens had listed the Lowry Avenue address as his address in court records, and the property at the Washburn Avenue address on record for Owens had been occupied by new tenants since September 2013. Another sheriff's deputy testified that, when Owens was booked into jail following his arrest, he told the booking clerk that he had lived at the Lowry Avenue apartment for approximately four months.

An examiner employed by the Hennepin County Sheriff's Office Crime Lab testified that he found no identifiable fingerprints when he examined and tested the handgun discovered in the bedroom. The examiner also testified that it is not unusual to find no identifiable fingerprints on a firearm. A forensic scientist employed by the crime lab testified that she performed DNA testing on the handgun and there were so many DNA profiles on the gun that "there was no guarantee that any one person was fully represented there." The forensic scientist testified that such a result is not unusual when a firearm is tested for DNA. The jury found Owens guilty of possession of a firearm by a prohibited person. This appeal followed.

4

**D E C I S I O N**

**I.**

Owens argues that the district court erred by denying his motion to suppress all evidence stemming from what he contends was an improper execution of the arrest warrant. When reviewing a district court's pretrial order on a motion to suppress evidence, an appellate court reviews factual findings under a clearly-erroneous standard and reviews legal determinations de novo. *State v. Eichers*, 853 N.W.2d 114, 118 (Minn. 2014), *cert. denied* 135 S. Ct. 1557 (2015). "A finding is clearly erroneous when there is no reasonable evidence to support the finding or when an appellate court is left with the definite and firm conviction that a mistake occurred." *State v. Rhoads*, 813 N.W.2d 880, 885 (Minn. 2012). The determination of witness credibility on a motion to suppress evidence is left to the district court. *See State v. Johnson*, 463 N.W.2d 527, 532 (Minn. 1990). The constitutionality of a search or seizure is reviewed de novo. *State v. Anderson*, 733 N.W.2d 128, 136 (Minn. 2007).

"[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603, 100 S. Ct. 1371, 1388 (1980); *see also Steagald v. United States*, 451 U.S. 204, 221, 101 S. Ct. 1642, 1652 (1981) (stating that "an arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest"). "Under *Payton*, officers executing an arrest warrant must have a reasonable belief that the suspect resides at the place to be entered and have reason to believe that the suspect is present at the time the warrant is executed." *United States v.*

*Risse*, 83 F.3d 212, 216 (8th Cir. 1996) (emphasis omitted) (quotation omitted). Whether officers possessed a reasonable belief about the suspect's residence "is a mixed question of fact and law." *Id.* at 215 (quotation omitted). The findings with respect to the historical facts are reviewed for clear error and the ultimate conclusion is reviewed de novo. *Id.*

An arrest warrant does not authorize entry into a third party's home to conduct an arrest; absent exigent circumstances, a search warrant must be obtained to enter the third party's home. *Steagald*, 451 U.S. at 220-22, 101 S. Ct. at 1652. The exclusionary rule requires suppression of the direct or indirect products of an unlawful invasion. *Wong Sun v. United States*, 371 U.S. 371, 484-85, 83 S. Ct. 407, 416 (1963).

Owens argues that the district court failed to make necessary findings that the deputies had a reasonable belief that he resided at the Lowry Avenue apartment and had reason to believe that he was present at the apartment when the arrest warrant was executed. The district court determined that there was "more than enough evidence to believe the [deputies] had reason to believe that [Owens] was staying at [the Lowry Avenue] address" and that the deputies had a "reasonable belief that he was staying there." Owens contends that because "staying" may be defined differently than "residing," the district court did not find that the deputies had a reasonable belief that he resided at the Lowry Avenue apartment. But the district court also found that Owens was using the address on Lowry Avenue as his address and that the deputies "did their due diligence to try to find out where [Owens] was living," which demonstrates that although the district court referred to where Owens was "staying," the district court's conclusion

6

was that the deputies had a reasonable belief that Owens was residing at the Lowry Avenue apartment.

Furthermore, we review de novo the ultimate conclusions that the deputies had a reasonable belief that Owens resided at the Lowry Avenue apartment and that he was present at the apartment when the arrest warrant was executed. *See Risse*, 83 F.3d at 215. Marshall testified at the *Rasmussen* hearing that he had addresses for Owens on Washburn Avenue and Lowry Avenue, and he learned that new tenants resided at the Washburn Avenue address. He also learned that Owens had provided the Lowry Avenue address for court records in August and November 2013, only a few months before the arrest warrant was executed. From these facts, we conclude that the deputies had a reasonable belief that Owens resided at the Lowry Avenue apartment.

Marshall and Sundberg testified at the *Rasmussen* hearing that they listened at the door before knocking and heard a male and a female speaking inside. Marshall testified that, when N.W. answered the door and was asked whether Owens was inside the apartment, "she turned, quickly looked back over her shoulder, turned back towards [the deputies] with her mouth hanging open and a blank stare on her face like she didn't know what to say." Marshall also testified that, "[b]ased on the totality of what we knew and what [N.W.] did at that time [he] believed . . . Owens was in the apartment." Sundberg testified that N.W.'s reaction upon being asked whether Owens was inside the apartment was that "[s]he looked over her left shoulder towards the bedroom and looked back at us with kind of a blank stare, mouth open, and did not have a response." Sundberg also testified that, "in my training and experience, it looked like [N.W.] was trying to hide

7

something, that there was someone behind her." Based on this testimony, we conclude that the deputies had reason to believe that Owens was present at the Lowry Avenue apartment.

Because the deputies had a reasonable belief that Owens resided at and was present at the Lowry Avenue apartment, they had the authority to enter the apartment to execute the arrest warrant after knocking at the door and giving the apartment's residents an opportunity to respond. *See Payton*, 445 U.S. at 603, 100 S. Ct. at 1388; *see also Hudson v. Michigan*, 547 U.S. 586, 589-90, 126 S. Ct. 2159, 2162-63 (2006) (stating that law enforcement officers executing a warrant at a residence generally must announce their presence and provide the residents an opportunity to open the door).

Owens argues in his pro se supplemental brief that the protective sweep of the bedroom during his arrest was not justified. "[L]aw enforcement officers may conduct, as a precautionary measure, protective sweep searches of areas immediately adjoining the place of arrest without probable cause or reasonable suspicion to believe criminal conduct is occurring." *State v. Bergerson*, 671 N.W.2d 197, 203 (Minn. App. 2003) (citing *Maryland v. Buie*, 494 U.S. 325, 110 S. Ct. 1093 (1990)), *review denied* (Minn. Jan. 20, 2004). The deputies testified at the *Rasmussen* hearing that when Marshall arrested Owens as Owens was leaving the bedroom, Sundberg entered the bedroom and saw the Mason jar in plain view. Sundberg's protective sweep of the bedroom during Owens's arrest was lawful. Because the arrest warrant was properly executed, the district court did not err by denying Owens's motion to suppress evidence.

8

## II.

Owens argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he possessed the handgun discovered in the apartment. Assessing the sufficiency of the evidence involves "a painstaking review of the record to determine whether the evidence and reasonable inferences drawn therefrom, viewed in a light most favorable to the verdict, were sufficient to allow the jury to reach its verdict." *State v. Vang*, 847 N.W.2d 248, 258 (Minn. 2014) (quotation omitted). The appellate court must "assume that the [jury] believed the state's witnesses and disbelieved any contrary evidence." *Gulbertson v. State*, 843 N.W.2d 240, 245 (Minn. 2014) (quotation omitted). A guilty verdict will not be reversed "if, giving due regard to the presumption of innocence and to the prosecution's burden of proving guilt beyond a reasonable doubt, the jury could reasonably have found the defendant guilty of the charged offense." *Vang*, 847 N.W.2d at 258 (quotation omitted).

The sufficiency of circumstantial evidence is reviewed using a two-step analysis. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). First, the appellate court identifies the circumstances proved by the evidence, "consider[ing] only those circumstances that are consistent with the verdict." *Id.* at 598-99 (stating that the jury is in the best position to evaluate the credibility of circumstantial evidence and that the appellate court "defer[s] to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflict[s] with the circumstances proved" (quotation omitted)). Second, the appellate court "determine[s] whether the circumstances proved are consistent with guilt and inconsistent with any rational

9

hypothesis except that of guilt." *Id.* at 599 (quotations omitted) (stating that the reasonableness of all inferences is examined independently, with no deference given to the jury's choice between reasonable inferences).

"Possession of a firearm may be proved through actual or constructive possession." *State v. Salyers*, 858 N.W.2d 156, 159 (Minn. 2015).

> [T]o establish constructive possession, the State must show either (1) that the prohibited item was found "in a place under defendant's exclusive control to which other people did not normally have access," or (2) if the prohibited item was found "in a place to which others had access, there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it."

*Id.* (quoting *State v. Florine*, 303 Minn. 103, 105, 226 N.W.2d 609, 611 (1975)) (stating that the *Florine* analysis is fact driven and that "ease of access is certainly one factor relevant to establishing constructive possession"); *see also State v. Porte*, 832 N.W.2d 303, 308 (Minn. App. 2013) (stating that "[p]roximity is an important factor in establishing constructive possession" and that "an item that is constructively possessed may be possessed by more than one person" (quotation omitted)).

> [T]he purpose of the constructive-possession doctrine is to include within the possession statute those cases where the state cannot prove actual or physical possession at the time of arrest but where the inference is strong that the defendant at one time physically possessed the item and did not abandon his possessory interest in the item but rather continued to exercise dominion and control over it up to the time of the arrest.

*Salyers*, 858 N.W.2d at 159 (quotation omitted).

10

The handgun was not found in Owens's physical possession or in a place under his exclusive control. The parties dispute whether the evidence was sufficient to permit a strong inference that Owens consciously exercised dominion and control over the handgun up to the time of his arrest. The circumstances proved by the evidence presented at trial include that Owens was living at the Lowry Avenue apartment at the time of his arrest; he was using the Lowry Avenue address as his address and stated when being booked into jail that he had lived at the apartment for approximately four months. The apartment contained one bedroom. When the deputies first saw Owens in the apartment, he was in the bedroom sitting on the side of the bed facing the doorway to the bedroom. Photographs admitted into evidence show that the handgun was found between the mattress and box spring near the side of the bed closest to the doorway to the bedroom. No identifiable fingerprint or DNA profile was discovered on the handgun, which is not an unusual result when a firearm is tested. The search of the bedroom also revealed loose bullets under the box spring, hidden piles of currency totaling approximately $1,600, and multiple Mason jars containing an amount of marijuana that is not consistent with personal use.

The only reasonable inference from the circumstances proved is that Owens constructively possessed the handgun by consciously exercising dominion and control over it up to the time of his arrest. The discovery of an item in a defendant's bedroom permits an inference that the defendant constructively possessed the item. *See, e.g.*, *State v. Colsch*, 284 N.W.2d 839, 841 (Minn. 1979) (holding that the evidence was sufficient to support the jury's finding of constructive possession where controlled substances were

11

found in the defendant's bedroom); *State v. Simon*, 275 N.W.2d 51, 52 (Minn. 1979) ("The state's evidence showed that the LSD, along with other items, including a syringe, a passport, and a balance scale, was found in defendant's bedroom during the execution of a warrant to search the mobile home which defendant jointly leased and occupied with a friend. This evidence clearly was sufficient to prove constructive possession."). And the handgun was discovered under the location where Owens was sitting when the deputies first saw him. *See Salyers*, 858 N.W.2d at 159 (stating that "ease of access is certainly one factor relevant to establishing constructive possession"); *Porte*, 832 N.W.2d at 308 (stating that "[p]roximity is an important factor in establishing constructive possession" (quotation omitted)). Owens is correct that N.W. or someone else may have possessed the handgun, but, because constructive possession may be shared, that possibility does not preclude a conclusion that Owens constructively possessed the handgun. *See Porte*, 832 N.W.2d at 308 ("[A]n item that is constructively possessed may be possessed by more than one person."). The evidence presented at trial was sufficient to prove that Owens constructively possessed the handgun.

**Affirmed.**