# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2339

_____

United States of America,

        Appellee,

v.

Anthony James Smith,

        Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Northern District of Iowa.

[PUBLISHED]

_____

Submitted: February 19, 2004
Filed: April 13, 2004

_____

Before RILEY, HANSEN, and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

After the district court[1] denied his motion to suppress evidence, a jury found Anthony James Smith guilty of attempting to manufacture five grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 841 and 846 (2000), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (2000). He

_____

[1]The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa, adopting the report and recommendation of the Honorable Paul A. Zoss, United States Magistrate Judge for the Northern District of Iowa.

was sentenced to 324 months on the drug offense and a concurrent 120 months on the firearm offense. On appeal, Smith challenges the district court's denial of his suppression motion. For the reasons discussed below, we affirm the judgment of the district court.

I.

On the morning of June 6, 2002, Officer Dan Wellen and Officer Logan Wernet of the Mason City, Iowa Police Department responded to a citizen's report of a strong chemical odor coming from Smith's apartment, where he lived with his girlfriend, Dawn Hartkopp, and their child. There was an outstanding arrest warrant for Smith for contempt of court for failure to appear for a hearing. Officer Wellen had been to Smith's apartment twice in the previous two months on state court-ordered child welfare checks, both visits also occurring in the morning. On each visit, Smith was present in the apartment but he did not immediately answer the door even after repeated knocking.

Upon arriving at the apartment, Officer Wernet detected an odor he associated with methamphetamine manufacturing. The officers knocked several times on one of the five doors leading into the apartment but did not receive a response, though they heard a baby crying inside. Four of the doors had windows composed of frosted panes of glass, and the fifth door had a nonfrosted window partially covered on the inside by a towel. While the officers were knocking on the doors, they observed that someone inside the apartment had moved the towel, further obstructing the view into the apartment. Painted transom windows were above each of the five doors. The officers attempted to boost up one another in order to see through a small spot in the transom window where the paint had been chipped away, but they were unsuccessful. They then obtained a stepladder which they used to look through the spot. Officer Wellen saw Smith crouching behind the door and recognized him from Smith's

2

distinctive tattoo the officer had observed on a previous visit. The officers then called the courthouse to confirm that the warrant for Smith was valid.

They then contacted the landlord, who confirmed that Smith lived in the apartment. The landlord arrived and attempted to unlock the door with his keys but was unsuccessful. A locksmith was summoned to unlock the door; however, the officers only opened the door an inch before it was shut by someone inside. As they did so, they heard someone say, "They are opening it," from within the apartment. The officers were then able to open the door and were met by Hartkopp. Officer Wernet stayed with Hartkopp while Officer Wellen found Smith in the bathroom and arrested him. Items consistent with the manufacture of methamphetamine were on a table in the kitchen where Hartkopp was being held. She gave the officers permission to search the apartment for other individuals. In the bedroom, the officers found precursors for methamphetamine manufacture in plain view. The officers later obtained a search warrant to search the entire apartment and seized the items related to the manufacture of methamphetamine.

After Smith was indicted by a federal grand jury, he filed a motion to suppress. He argued that the officers' use of a ladder to see into his apartment through the unpainted spot in the transom window above his door constituted an illegal search, and that the resulting evidence was its illegal fruit and should be suppressed. The district court denied Smith's motion on two grounds. First, the court found that the police were justified in entering the apartment on the basis of the arrest warrant because they had a reasonable belief that Smith lived at the apartment and was present at the time. Second, the court found that Smith had no subjective expectation of privacy in the areas visible through the glass in the doors and transoms, and that the officers did not violate Smith's Fourth Amendment rights.

Smith was convicted and sentenced, and he now appeals.

In reviewing a district court's denial of a motion to suppress, we examine its factual findings for clear error and review de novo whether the Fourth Amendment has been violated. United States v. Neumann, 183 F.3d 753, 755 (8th Cir.), cert. denied, 528 U.S. 981 (1999). We conclude that the officers' entry into the apartment based upon the arrest warrant was justified as they had a reasonable belief that Smith resided in the apartment and that he was present at the time they entered, apart from any observations they made of him through the unpainted spot on the transom window.

We have recognized that "[a] valid arrest warrant carries with it the authority to enter the residence of the person named in the warrant in order to execute the warrant so long as the police have a reasonable belief that the suspect resides at the place to be entered and that he is currently present in the dwelling." United States v. Clayton, 210 F.3d 841, 843 (8th Cir. 2000) (citing Payton v. New York, 445 U.S. 573, 603 (1980)). This applies with equal force to misdemeanor warrants. Id. Whether an officer's belief is reasonable is a mixed question of law and fact. United States v. Risse, 83 F.3d 212, 215 (8th Cir. 1996).

Substantial evidence exists to support the officers' belief that the apartment in question was Smith's residence. Officer Wellen had been there on two previous occasions to meet with Smith. The landlord also confirmed that Smith lived there. We have found an officer's belief that a suspect lived at a dwelling to be reasonable on weaker evidence than this. See, e.g., United States v. Junkman, 160 F.3d 1191, 1193-94 (8th Cir. 1998) (hotel clerk's misidentification of man she believed to be staying in room gave police reasonable belief to enter hotel room on arrest warrant), cert. denied, 526 U.S. 1094 (1999); Risse, 83 F.3d at 216-17 (girlfriend's previous assertion to police that she was "staying with" defendant, along with informant's statement that girlfriend lived with defendant, were sufficient to justify entry into

defendant's home based on arrest warrant for girlfriend, even though girlfriend maintained another residence elsewhere). We easily conclude that the officers' belief that the apartment they were entering was Smith's was reasonable.

It is not enough, however, for the police to know that a suspect is a resident of a dwelling; the police must also have a reason to believe that the suspect is present at the time of entry. We have found an officer's belief that a suspect was at home reasonable when based on tips from citizens. See, e.g., United States v. Boyd, 180 F.3d 967, 978 (8th Cir. 1999) (officer reasonably believed that suspect was home based on confidential informant's assertion, corroborated by police observation of a car appearing to be defendant's and observing that hood of defendant's girlfriend's car was warm, that defendant had arrived there). Other circuits have found an officer's belief that a suspect was home reasonable when based on knowledge of the usual behavior of the suspect. See United States v. Lauter, 57 F.3d 212, 215 (2[d] Cir. 1995) (officers reasonably believed that suspect was home in the morning because reliable confidential informant said suspect usually slept late and was unemployed).

The officers believed that an adult was inside the apartment based on the movement of the towel in the window, and they could reasonably believe that a crying baby would not be alone in the apartment. They knew that Smith had been in the apartment during the morning hours on two previous occasions. They also knew that Smith usually did not answer the door after repeated knocking. Viewing the totality of the circumstances the officers faced, we conclude they had a reasonable belief that Smith was present inside the apartment and were thus justified in entering the apartment as they did to execute the arrest warrant. Once lawfully inside the apartment, the officers observed the incriminating evidence in plain view. Those observations provided the probable cause for the search warrant which was later executed to seize the items.

## III.

Having concluded that the officers' entrance into Smith's apartment was justified on the basis of the arrest warrant, we have no need to reach the question of whether looking through the transom amounted to an illegal search. Accordingly, the judgment of the district court is affirmed.

_____