656 F.Supp.2d 998 (2009)
UNITED STATES of America, Plaintiff,
v.
Michael Kelly TAYLOR, Defendant.
No. 4:08CR728-DJS.
United States District Court, E.D. Missouri, Eastern Division.
September 2, 2009.
*999 Eliza F. Williams, Office of U.S. Attorney, St. Louis, MO, for Plaintiff.

ORDER
DONALD J. STOHR, District Judge.
This matter is before the Court on the report and recommendation [Doc. #34] issued by Magistrate Judge Frederick R. Buckles, which recommends that this Court grant defendant Michael Kelly Taylor's motion to suppress evidence [Doc. # 19]. The government filed a statement of objections to the report and recommendation [Doc. # 37], as allowed by 28 U.S.C. § 636(b)(1)(C).

*1000 Procedural History
Defendant is charged in Count I of the Indictment with being a felon in possession of a firearm. In his motion to suppress, defendant states that he was removed from his home after he was found in the attic and arrested pursuant to an arrest warrant. Defendant argues that the search of the attic subsequent to his removal violated the Fourth Amendment, and seeks an order suppressing and excluding all evidence found during that search.
Following an evidentiary hearing on June 16, 2009, Judge Buckles issued a report and recommendation. He finds that before the contested search, the defendant had been removed from the home, and was handcuffed and sitting in a police car outside of the residence. He concludes that any concern for officer safety or destruction of evidence had dissipated by the time the searching officer reentered the attic and found the items subsequently seized. Further, he concludes that the exception which allows a search of a vehicle if it is reasonable to believe the vehicle contains evidence of the offense is not applicable under the present circumstances.[1] Pursuant to the Supreme Court's recent holding in Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the magistrate judge recommends that defendant's motion to suppress evidence be granted.

Standard of Review
Pursuant to 28 U.S.C. § 636(b)(1)(C), a court shall make a de novo determination of those portions of the report, findings, and recommendations to which a party has objected. A court may accept, reject, or modify, in whole or in part, a magistrate judge's findings or recommendations. A court may also receive further evidence or remand the matter to the magistrate judge with instructions.

Statement of Facts
The report and recommendation in this case provides a detailed account of the relevant events surrounding the arrest of defendant and the subsequent search of the house. The government does not object to the recitation of facts contained in the report and recommendation. Accordingly, the Court adopts the factual findings in their entirety.
In the morning hours of January 8, 2008, several officers assigned to a fugitive task force went to 10064 Stimson in St. Louis County to attempt to arrest defendant for several outstanding arrest warrants. The warrants were for the offenses of Unlawful Use of a Weapon and Tampering with a Witness. The officers knocked and announced their presence several times and were met with no answer. The officers then called for the assistance of other officers. Several other officers arrived, including Officer Michael Neal. The officers continued to knock and announce their purpose and to ask for admittance to the residence, again to no avail. The officers then broke open a door and entered the residence. They searched the first floor living area but were not able to locate anyone. In the course of searching they noticed a set of stairs leading up to an attic area. Detective Gary Kroeger climbed the stairs, followed by Officer Neal. Once in the attic Detective Kroeger, with the aid of a flashlight, was able to locate defendant, who was laying down on the attic floor between two rafters. He was partially covered by a plastic sheet. He was holding a cellular telephone in his hand. Detective Kroeger several times told defendant *1001 to drop the telephone and to come back to where the officers were standing. Eventually, defendant complied. The officers were able to see that there was no one else in the attic. Defendant was removed from the residence, placed in handcuffs, and put in a police vehicle. Detective Kroeger and another officer remained with defendant.
Officer Neal then reentered the residence to do a "secondary sweep of the area where [defendant] was last seen at." He did so to look for "contraband, weapons, knives." Doc. # 34, p. 4. He was not concerned that any other person might be concealed in the attic area. Officer Neal then went back into the attic area. Using his flashlight he noticed a firearm partially covered by a handkerchief. Officer Neal then informed the other officers of his discovery. An evidence technician officer was then called to the scene to photograph and seize the evidence. The firearm and cellular telephone were photographed and seized.
The government wishes to emphasis the following facts. Officer Neal brought defendant down from the attic, arrested him, secured him in the police vehicle, and immediately returned to the attic area to search for weapons. Office Neal searched only the area of the attic that had been in defendant's immediate custody and control. Office Neal found the weapon partially concealed beneath a handkerchief, in an area within easy reach of where defendant had been apprehended.

Discussion
The government makes three arguments in their objection to the report and recommendation. First, the government argues that the Supreme Court's Gant decision addressed only vehicle searches, and therefore it did not overrule Eighth Circuit case law approving wingspan searches incident to arrests that occur in residences. Second, the government argues that even if Gant applies to residential searches, in this case there was ample reason to believe that evidence relevant to the crime of arrest would be found within the defendant's reach, and that such a search exception is applicable in this case. Finally, the government argues that even if the search is now to be deemed unlawful under Gant, Agent Neal acted in good faith in relying on then-valid Eighth Circuit law, which, at the time of the search, unambiguously approved the exact kind of search that Agent Neal conducted.
In Gant, the Supreme Court revisited its decision in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), which allowed the search incident to arrest exception to permit a search of the passenger compartment of a vehicle and containers therein if a lawful arrest was made of the occupant of the vehicle. In Gant, police officers stopped the defendant's vehicle because he had an outstanding warrant for driving with a suspended license. After the defendant was handcuffed and locked in the back of a patrol car, police officers searched his car and discovered cocaine in the pocket of a jacket. Ultimately, the Supreme Court suppressed the evidence found during that search because the defendant was handcuffed and secured in separate patrol cars before the search of his vehicle, and no evidence of the offense of arrest of driving with a suspended license could possibly have been obtained by a search of his vehicle. Gant, 129 S.Ct. at 1714 ("We hold that Belton does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle.").
With regard to the government's argument that Gant should not be extended beyond the automobile context, the Court notes that the Gant decision itself does not *1002 indicate that it is strictly limited to the automobile context. Rather, the Supreme Court merely states that it rejects the broad reading of Belton that would authorize a vehicle search incident to every recent occupant's arrest. Gant, 129 S.Ct. at 1719 ("[W]e reject this reading of Belton and hold that the Chimel [v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)] rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search."). Many cases outside of the automobile context rely on Belton to uphold a search incident to an arrest, and it stands to reason that those decisions are subject to reexamination in light of Gant. Indeed, it is worth noting that at least one of the non automobile cases relied upon by the government cites Belton to uphold a search of a home incident to an arrest. See United States v. Palumbo, 735 F.2d 1095, 1097 (8th Cir.1984). Further, the cases cited by the government offer distinguishable sets of facts to the case now before this Court. See United States v. Miller, 946 F.2d 1344, 1345 (8th Cir.1991) (discussing search incident to arrest in a case where the officer pulled opened a nightstand and found a blue steel revolver while holding the defendant against a wall); Palumbo, 735 F.2d at 1097 (discussing search incident to arrest in a case where the officer testified that the defendant was not handcuffed when the officers searched the area behind a drawer within an arm's reach from where defendant sat). Finally, other courts have extended Gant beyond the automobile context. See, e.g., United States v. Perdoma, 2009 WL 1490595, at *2 (D.Neb. May 22, 2009) ("In light of the Gant decision, the court must conclude that the magistrate judge's reliance on the `search incident to arrest' exception to the warrant requirement to justify the search of the defendant's bag is erroneous and contrary to law."). The Court is not persuaded that Gant should be limited to the automobile context.
Second, the government contends that even if Gant applies to residential searches, in this case there was ample reason to believe that evidence relevant to the crime of arrest would be found within the defendant's reach. In essence, the government argues that Gant cannot be read two different ways, that is, extending beyond the automobile context with regard to searches incident to arrest, but limited to automobiles for the search exception allowing searches if there is reason to believe a vehicle contains evidence of the offense of the arrest.
The magistrate judge correctly noted the portion of the Gant decision that stated that a search of a vehicle is authorized if it is "reasonable to believe that the vehicle contains evidence of the offense" arises out of "circumstances unique to the vehicle context." Doc. # 34, p. 10 (quoting Gant, 129 S.Ct. at 1719); see also Gant, 129 S.Ct. at 1719 ("[W]e also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." (quotation omitted)). Further, the Court notes the Supreme Court in Gant did not place such a restriction on searches incident to an arrest. Gant, 129 S.Ct. at 1716 ("The [search incident to an arrest] exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations."). Specifically, the Court notes when the Supreme Court in Gant discusses circumstances that justify searches incident to an arrest, it generally refers to "arrests." However, when the Supreme Court in Gant discusses circumstances that justify searches based on evidence relevant to the crime of *1003 arrest that might be found in the vehicle, it specifically refers to "circumstances unique to the vehicle context." Accordingly, the Court finds that the exception that allows an officer to search for evidence of the offense is not applicable in the present case.
Finally, the government argues that even if the search is now to be deemed unlawful under Gant, Agent Neal acted in good faith in relying on then-valid Eighth Circuit law, which, at the time of the search, unambiguously approved the exact kind of search that Agent Neal conducted.
The Court is not persuaded that the type of search Agent Neal conducted was unambiguously approved by Eighth Circuit case law. Indeed, as noted above, the government cites cases that have distinguishable facts to the present case, including facts relating to the proximity of the defendant to the area searched and the security of the defendant. Further, the Supreme Court's Gant decision is clear: courts are not to take a broad reading of Belton, because the rationale that authorizes police to search a vehicle incident to a recent occupant's arrest applies "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Gant, 129 S.Ct. at 1719.
For the above states reason, the Court finds that the report and recommendation should be adopted and approved, and that defendant's motion to suppress should be granted. Accordingly,
IT IS HEREBY ORDERED that the government's objection to the report and recommendation [Doc. #37] is hereby overruled.
IT IS FURTHER ORDERED that the report and recommendation [Doc. # 34] is accepted and adopted.
IT IS FURTHER ORDERED that defendant Michael Kelly Taylor's motion to suppress evidence [Doc. # 19] is granted.

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
FREDERICK R. BUCKLES, United States Magistrate Judge.
All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The defendant filed a Motion To Suppress Evidence. Testimony and evidence was adduced on the motion at a hearing before the undersigned on June 16, 2009. The undersigned ordered that a written transcript of the hearing be prepared and filed to assist the undersigned in making accurate findings and conclusions. A copy of the transcript was filed with the court on June 24, 2009. The undersigned has reviewed the written transcript as well as the digital audio recording of the hearing in making the following findings of fact and conclusions of law:

Findings of Fact
In the morning hours of January 8, 2008, several officers assigned to a fugitive task force intended to attempt to arrest Michael Kelly Taylor for several outstanding arrest warrants issued by the Circuit Court of St. Louis County, Missouri. The warrants were for the offenses of Unlawful Use of a Weapon and Tampering With a Witness/Victim. The warrants listed Taylor's address as 10064 Stimson, St. Louis County, Missouri. The warrants listed Taylor's birth date as June 16, 1962.
The officers went to the vicinity of the listed address. The first officers to arrive on the scene were Detective Gary Kroeger and Sergeant Thomas Smith. In an effort to learn whether Taylor was at the residence *1004 the officer had an officer at St. Louis County Police Headquarters place a call to the residence. In that call the officer, under the ruse of representing a job search program that would assist Taylor in filling out a job application form to assist him in obtaining employment, asked for his name and date of birth. Taylor provided the name Michael Taylor and date of birth as June 16, 1962. This comported with the name and date of birth listed on the arrest warrant.
The officers on the scene also noted a car to be parked in the driveway of the residence. A neighbor told them that if the car was parked in the driveway Taylor would be at the residence. Sergeant Smith was also able to notice that a man was moving about inside the residence.
The officers then knocked and announced their presence several times and were met with no answer. The officers then called for the assistance of other officers. Several other officers then arrived, including Officer Michael Neal.
The officers continued to knock and announce their purpose and to ask for admittance to the residence, again to no avail. The officers then broke open a door and entered the residence. They searched the first floor living area but were not able to locate anyone. In the course of searching they noticed a set of stairs leading up to an attic area. Detective Kroeger climbed the stairs followed by Officer Neal. Once in the attic Detective Kroeger with the aid of a flashlight was able to locate Taylor who was laying down on the attic floor between two rafters. He was partially covered by a plastic sheet. He was holding a cellular telephone in his hand. Detective Kroeger several times told Taylor to drop the telephone and to come back to where the officers were standing. Eventually, Taylor complied. The officers were able to see that there was no one else in the attic.
Because the attic quarters were cramped and the officers and Taylor were required to descend the steep steps from that attic, Taylor was allowed to proceed down the steps before being handcuffed. Upon Taylor's arrival at the base of the stairs Sergeant Smith placed him in handcuffs. Taylor was removed from the residence and placed in a police vehicle. Detective Kroeger and Sergeant Smith remained with Taylor.
Officer Neal had stepped out onto the front porch area as Taylor was being removed from the residence. Officer Neal then re-entered the residence to do a "secondary sweep of the area where Mr. Taylor was last seen at." He did so to look for "contraband, weapons, knives." He was not concerned that any other person might be concealed in the attic area.
Officer Neal then went back upon into the attic area. Using his flashlight he noticed a firearm partially covered by a kerchief. Officer Neal then informed the other officers of his discovery. An evidence technician officer was then called to the scene to photograph and seize the evidence. The firearm and cellular telephone were photographed and seized. (See Government's Exhibit 1Photograph).
A search was also conducted of a dresser drawer on the first floor living area. The government has represented to the defendant and to the court that it does not intend to offer in evidence at trial any evidence found in and seized from the dresser drawer.
As Taylor was seated in the police car Sergeant Smith engaged him in conversation, asking Taylor why he wouldn't answer the door and admit the officers to the residence Taylor replied that he knew the officers were outside and that they were not going to leave. The government has represented to the defendant and to the *1005 court that it does now intend to offer the defendant's statement in evidence at the trial.

Discussion
As grounds to suppress the evidence seized from the attic area the defendant first asserts that the officers unlawfully entered the residence on Stimson to effect his arrest.
"[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 601, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); United States v. Smith, 363 F.3d 811, 814 (8th Cir.2004).
The officers here had reason to believe that Taylor resided at the Stimson address as that was listed as his address on the warrant. There is nothing in the evidence before the court that would show that the officers had reason to believe otherwise. Furthermore, they had ample reason to believe that Taylor was within the residence at the time. In the ruse call placed by a police officer Taylor identified himself by name and gave a date of birth which matched that listed as his date of birth on the warrant. A car was parked in the driveway and a neighbor told the officers that if the car was there, then Taylor was at the residence. Also the officers were able to se a man moving about in the residence. This provided ample reason to believe that this was Taylor's residence and that he was then present inside. Because Taylor refused their request that he open the door and admit them they were justified in breaking open the door and entering to arrest Taylor.
The defendant claims in his motion that the search of the attic in which the gun which is the subject of the indictment was found and thereafter seized was not a lawful search. In its written response to the defendant's motion the government asserts that the gun was found and seized in a search incident to the lawful arrest of the defendant.
The Supreme Court has recognized as an exception to the warrant requirement of the Fourth Amendment searches conducted incident to the arrest of a defendant. Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914). In Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) the Supreme Court held that the exception permitted a search of the person of an arrestee and the area within his "immediate control". Id. at 763, 89 S.Ct. 2034. In so holding the Court reasoned that,
When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control" construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.
Id. at 762-63, 89 S.Ct. 2034.
In New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) the Supreme Court applied the search incident to *1006 arrest exception to permit a search of the passenger compartment of a vehicle and containers therein if a lawful arrest was made of the occupant of the vehicle.
In Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) the Supreme Court had occasion to revisit the Belton holding. The court noted that the holding in Belton had widely been construed to permit a search of a vehicle that had been occupied by an arrested individual after the individual had been removed from the vehicle and handcuffed and secured away from the vehicle, or even after the arrestee had been removed from the scene of the arrest. Id. at 1718-19. The Court then rejected such a reading of Belton, stating,
Under this broad reading of Belton, a vehicle search would be authorized incident to every arrest of a recent occupant notwithstanding that in most cases the vehicle's passenger compartment will not be within the arrestee's reach at the time of the search. To read Belton as authorizing a vehicle search incident to every recent occupant's arrest would thus untether the rule from the justifications underlying the Chimel exception a result clearly incompatible with our statement in Belton that it "in no way alters the fundamental principles established in the Chimel case regarding the basic scope of searches incident to lawful custodial arrests." 453 U.S., at 460, n. 3, 101 S.Ct. 2860, 69 L.Ed.2d 768. Accordingly, we reject this reading of Belton and hold that the Chimel rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.
Id. at 1719.
In Gant, the defendant was being arrested on an outstanding warrant for his arrest issued for driving with a suspended license. He was arrested after he arrived at a home in a vehicle, got out of the vehicle and walked away. Following the arrest he was handcuffed and placed in the backseat of a police car. Police then searched the vehicle in which he had arrived and found and seized a gun and cocaine. He was subsequently charged with possession of cocaine and drug paraphernalia as a result of the drugs found during the search of the vehicle. The defendant moved to suppress the evidence. The motion was denied by the trial court holding that the search was a lawful search incident to the arrest of the defendant. The Arizona Supreme Court reversed, holding that the search incident to arrest exception to the warrant requirement did not apply. The Arizona Supreme Court noted that the underpinnings of the exception were officer safety and evidence preservation, and that since the defendant was handcuffed and secured in the patrol car the search could not be justified as necessary to protect the officers at the scene or to prevent the destruction of evidence. Id. at 1716. The Supreme Court affirmed the holding of the Arizona Supreme Court. The Court held that,
Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.
Id. at 1723-24.
It is clear from the holding in Gant that a search of an area under the "immediate control" of an arrestee is authorized only *1007 when the defendant is unsecured and within reaching distance of the area at the time of the search. None of these justifications support the search of the attic area here. As in Gant, the defendant had been removed from the area, was handcuffed and sitting in a police car outside of the residence. Any concern for officer safety or destruction of evidence was thus dissipated by the time Officer Neal reentered the attic and found the items subsequently seized. That portion of the holding authorizing a search of the vehicle if it is "reasonable to believe the vehicle contains evidence of the offense" arises out of "circumstances unique to the vehicle context", Id. at 1719, and therefore is not applicable in the circumstances here given the heightened expectation of privacy in one's home. Furthermore, there is nothing in the record which would indicate that Officer Neal had reason to believe that any evidence relating to the offenses for which the defendant was being arrested could be found in the attic area.
Therefore, the defendant's Motion To Suppress Evidence should be granted.
Accordingly,
IT IS HEREBY RECOMMENDED that defendant's Motion To Suppress Evidence (Docket No. 19) be granted.
The parties are advised that they have to and including Friday, July 31, 2009, in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir.1990).
NOTES
[1] The magistrate judge also found that there is nothing in the record which would indicate that Officer Neal had reason to believe that any evidence relating to the offenses for which the defendant was being arrested could be found in the attic area.