# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1864

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Curtis Junkman, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 19, 1998
Filed:  November 16, 1998

_____

Before HANSEN, LAY, and MURPHY, Circuit Judges.

_____

LAY, Circuit Judge.


Curtis Junkman was convicted of one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1).  He was sentenced on March 17, 1998, to 168 months on each count to be served concurrently.[1]

_____

[1]Ten other defendants were indicted along with Junkman.  They each pled guilty before trial.

Curtis Junkman now appeals and asserts: (1) that the district court[2] erred in denying his motion to suppress a search conducted at the Budget Host Motel in Fort Dodge, Iowa; (2) that the statements made by him at the time of his arrest were involuntary; and (3) that the court erred in failing to grant Junkman's motion for judgment of acquittal or, in the alternative, a motion for new trial.[3] We affirm the judgment of conviction on both counts.

## BACKGROUND

Curtis and Kent Junkman are brothers who look alike. The Fort Dodge Police Department was attempting to find Kent Junkman as they had a valid warrant for his arrest by reason of his escape from a correctional facility. On July 25, 1994, Officer Kevin Benson of the Fort Dodge Police Department was informed by the sheriff of Calhoun County, Iowa, that Kent Junkman might be staying in a motel in Fort Dodge. Officer Benson checked various motels and in doing so asked the clerk at the Budget Host Motel if Kent Junkman was registered. The desk clerk responded that room 122 was registered to a Dale Fitzgerald but that Fitzgerald had obtained the room for a "Junkman," who was staying in the room. At this time, Officer Benson went to the Fort Dodge Police Station and secured a photograph of Kent Junkman. Officer Benson returned to the motel, showed the desk clerk the picture, and asked her if she could identify him as the person staying in room 122. The clerk stated that she believed Kent Junkman was the person in the motel room. Upon learning that Kent Junkman might be in room 122, Officer Benson obtained assistance from three other officers and received a pass key to the room from the desk clerk. The officers then went to room

_____

[2]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

[3]We find, as did the district court, there exists overwhelming evidence supporting Junkman's conviction. Based upon our review of the record, we find no merit to either of the post-verdict motions.

122 and knocked and announced their presence. A woman looked out of the window and yelled either "cops" or "police" and then the officers heard a commotion in the room. Officer Benson repeated the announcement and told the occupants if they did not open the door, it would be opened with a pass key. When no one opened the door, the police entered the room with the pass key and found three individuals--Dale Fitzgerald, Kim Hancock, and Curtis Junkman. Kent Junkman was not in the room. At this time, the officers suspected drug activity in the room as drug paraphernalia was on a dresser in plain view.

The police took Dale Fitzgerald into the hallway, read him his Miranda rights, and asked him where Kent Junkman was. He stated he had not seen him. In light of the drug paraphernalia in plain view, the officers asked Fitzgerald if there were any drugs in the room. He responded he did not think so. The police then requested Curtis Junkman to step into the hallway. Officer Benson noted that Junkman's eyes had some redness, but he did not appear to be intoxicated, inhibited, or disoriented. At that time, Officer Benson read Curtis Junkman his Miranda rights and Junkman stated that he understood them. At the suppression hearing, Junkman asserted that he was sleeping off a methamphetamine binge, was awakened by the police, and that he was not in a sufficiently good condition to answer questions. After stating that he understood his Miranda rights, Officer Benson asked Junkman if he knew the whereabouts of his brother Kent. Curtis stated that he did not know. When asked whether there were drugs in the room, Curtis stated that there were a lot of drugs and cash in the room and that they belonged to him. Based primarily on Junkman's statements, the police then obtained a search warrant for the motel room. Five bags containing methamphetamine and $6,000 were found in a metal canister inside the room.

The motion to suppress was heard before a magistrate judge who filed his report and recommendation that the motion be denied. The district court, although using a somewhat different analysis than the magistrate judge, also denied the motion to suppress.

# DISCUSSION

## The Motion to Suppress

On appeal, Junkman does not challenge the search warrant as lacking probable cause. He asserts rather, that the initial police entry into the motel room was illegal. At issue is whether the arrest warrant for Kent Junkman provided the police officers with legal authority to enter room 122 at the Budget Host Motel. Junkman argues that under Payton v. New York, 445 U.S. 573 (1980), and Steagald v. United States, 451 U.S. 204 (1981), the arrest warrant did not justify entry into another person's "home" (the motel room) to search for the subject of the arrest warrant, and that a search warrant was required. See Steagald, 451 U.S. at 214 n.7.

We believe that both the Payton and Steagald cases are readily distinguishable. In Payton, the officers made a warrantless entry to effect Payton's arrest. As the Court stated in Payton, "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton, 445 U.S. at 573. This court has stated, "the officers' assessment [as to whether the suspect was within the premises] need not in fact be correct; rather, they need only 'reasonably believe' that the suspect resides at the dwelling to be searched and is currently present at the building." United States v. Risse, 83 F.3d 212, 216 (8th Cir. 1996) (explaining the relationship between Payton and Steagald). Unlike the facts in Payton, the officers did have an arrest warrant upon entry into the motel room. Junkman argues the police did not have a reasonable belief that either (1) Kent Junkman resided at room 122, or (2) that Kent Junkman was present in the room at the time of the initial entry. Based upon the totality of the circumstances leading up to the officers' entry of room 122, we agree with the district court that the officers' belief that Kent Junkman was residing in the room and was currently present in the room, although not in fact correct, was reasonable.

-4-

In addition, we believe <u>Steagald</u> can be distinguished from the present case. In <u>Steagald</u>, although the officers had an arrest warrant looking for a person that did not live at Steagald's home,[4] the Court makes clear that the agents sought to do more than use the warrant to arrest the third party. The Court stated: "In the absence of exigent circumstances, we have consistently held that such judicially untested determinations are not reliable enough to justify an entry into a person's home to arrest him without a warrant, or a search of a home for objects in the absence of a search warrant." <u>Steagald</u>, 451 U.S. at 213. In the present case, a search of the premises was not undertaken until such time that a search warrant was obtained. The search warrant which was subsequently obtained was based upon an independent source, <u>i.e.</u>, the statements of Curtis Junkman, and not upon any illegal search by the officers at the time of their entry into the room. <u>See</u> <u>Segura v. United States</u>, 468 U.S. 796 (1984); <u>Murray v. United States</u>, 487 U.S. 533 (1988). As earlier indicated, the officers entered the room in order to find Kent Junkman. He was the object of the arrest warrant. As long as the officers reasonably believed Kent Junkman was a co-resident of the room, the entry into the room to arrest Kent Junkman was a reasonable one. <u>See</u> <u>Steagald</u>, 451 U.S. at 214 n.7.

Curtis Junkman's Statement

This brings us then to the voluntariness of Curtis Junkman's incriminating statements. Junkman asserts that at the time he confessed, his physical condition was such that his will was overborne by law enforcement officers.[5] The district court

---

[4]In the present case, as previously mentioned, the officers had reasonable belief that Kent Junkman was a co-resident of the motel room. Therefore, the district court held the <u>Steagald</u> case did not apply. We agree; however, as we discuss, <u>Steagald</u> is distinguishable on other grounds as well.

[5]Junkman also contends that his statements should be suppressed as the fruit of the illegal entry into the motel room. Because we hold the police made a valid entry into the motel room, this argument has no merit.

disagreed. In <u>Colorado v. Connelly</u>, 479 U.S. 157 (1986), the Supreme Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause. . . ." <u>Connelly</u>, 479 U.S. at 167. The Court also stated that "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." <u>Id.</u> at 164. There is no evidence that the police at any time exercised any coercion to obtain Junkman's statements. Junkman was given the <u>Miranda</u> warnings and thereafter submitted to the officers' questions. Because there was no police coercion, Junkman's statements cannot be found involuntary. On this basis, we find that the district court's determination that the statements were voluntary was not erroneous.

The judgment of conviction is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-