# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3577

_____

United States of America,

        Appellee,

v.

Horace Andrew Davis, Jr.,

        Appellant.

Appeal from the United States
District Court for the
Eastern District of Arkansas.

_____

Submitted: April 16, 2002
Filed: May 3, 2002

_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Under an agreement preserving certain rights of appeal, Horace Andrew Davis, Jr. pled guilty to charges of attempting to manufacture methamphetamine, 21 U.S.C. §§ 841(a)(1), 846, possession of a firearm in relation to a drug offense, 18 U.S.C. § 924(c)(1), and possession of methamphetamine, 21 U.S.C. § 844(a). The district court[1] sentenced him to 138 months, and he raises two issues on appeal. Davis

_____

[1]The Honorable Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

contends that the Controlled Substances Act is an unconstitutional assertion of federal jurisdiction and that his motion to suppress should have been granted. We affirm.

Police officers in Pine Bluff, Arkansas obtained an arrest warrant for Davis in April 1999 after his wife had called for assistance because of a domestic dispute. When Davis was apparently not located at the address listed in the warrant, officers began checking other places where they had been told he might be. They received information on May 3, 1999 that Davis was driving a red Jeep Cherokee, and they saw such a vehicle parked beside a camper trailer at one of the addresses they were checking. There was a separate road leading to the trailer which had a cable or rope stretched across it. Most of the officers waited behind that barrier while one approached the house on the property. The waiting officers noticed a burn pile near the trailer and ether cans with punched out bottoms, things they associated with the manufacture of methamphetamine. A woman at the house said Davis might be in the trailer, and he emerged from it.[2] When the officers moved to arrest him, they noticed a second burn pile and smelled ether. They walked behind the trailer where the odor was very strong and saw other items used in manufacturing methamphetamine. These included a gallon jug with liquid in it, coffee filters, an ice cooler under the trailer, and a liquid solution which appeared to be a "pill soak."[3] The officers contacted narcotics detectives who obtained a search warrant for the trailer. The subsequent search of the trailer revealed methamphetamine, marijuana, and a shotgun. The

---

[2]Testimony at the hearing in the district court differed about exactly where Davis was arrested. The officers testified that it took place by the trailer, but Davis said it was at the barrier across the road. Davis testified that he went down on horseback to meet the officers and that they were never near the trailer until after his arrest. His version of events contained a number of inconsistencies, and the district court found the police version more credible. We see no clear error in its findings. United States v. Boyd, 180 F.3d 967, 975 (8th Cir. 1999).

[3]According to the record, a pill soak is used to extract pseudoephedrine from pills like ephedrine for the manufacture of crystal methamphetamine.

detectives also learned that Davis was living on the property with the permission of the owner of the house.

Davis was charged with attempting to manufacture methamphetamine, 21 U.S.C. §§ 841(a)(1), 846, possession of methamphetamine, § 844(a), and possession of a firearm in furtherance of a drug offense, 18 U.S.C. § 924(c)(1).[4] He moved to dismiss the indictment for lack of federal jurisdiction and to suppress the evidence found during the search of the trailer. After the district court denied both motions, he entered into a plea agreement under which he pled guilty while preserving his right to appeal the denial of his motions.

Davis contends that the court lacks jurisdiction because the Controlled Substances Act of 1970, Pub. L. 91-513 (codified at 21 U.S.C. § 801-904), exceeded the power given to Congress under the interstate commerce clause of the United States Constitution, Art. I, § 8, cl. 3. He argues an intrastate drug crime such as the manufacture of homemade methamphetamine does not substantially affect interstate commerce and cites in support United States v. Lopez, 514 U.S. 549, 559 (1995). His methamphetamine related convictions are based on statutory sections within the Controlled Substances Act, see 21 U.S.C. § 841, 844(a), 846, and his conviction for possession of a firearm in relation to a drug offense is derivative. It appears he challenges jurisdiction on all counts.

We rejected a similar argument in United States v. Patterson, 140 F.3d 767, 772 (8th Cir. 1998), where we held that Congress may regulate both intrastate and interstate drug trafficking under its commerce clause powers because of the effect that intrastate drug activity has upon interstate commerce. The findings which Congress

_____

[4]Davis was also charged with several similar offenses relating to incidents occurring after the search on May 3; those charges were dropped when Davis pled guilty in this case.

-3-

made in enacting the Controlled Substances Act, 21 U.S.C. § 801(2)-(6), demonstrate that local manufacture and distribution of controlled substances substantially affect interstate traffic in those substances, United States v. Bell, 90 F.3d 318, 321 (8th Cir. 1996). Unlike the statute at issue in Lopez which lacked such findings, 514 U.S. at 562, the Controlled Substances Act is a valid exercise of Congressional power under the commerce clause. Patterson, 140 F.3d at 772. Every other circuit to address the constitutional issue is in agreement. See United States v. Brown, 276 F.3d 211, 215 (6th Cir. 2002) (citing the cases).

Davis relies on cases where federal regulation over intrastate activity could not be justified under the commerce clause, United States v. Morrison, 529 U.S. 598 (2000) (provision of the Violence Against Women Act of 1995), and Jones v. United States, 529 U.S. 848 (2000) (limiting the reach of the federal arson statute). The activities which were targeted in those cases were unlike drug manufacture and distribution, however, because they were not economic endeavors. See Morrison, 529 U.S. at 611 ("federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce [requires] the activity in question [to be] some sort of economic endeavor.") Since Congress acted within its commerce clause authority in enacting the Controlled Substances Act, there is federal jurisdiction over Davis' offenses and the district court did not err by denying the motion to dismiss.

Davis also contends that his suppression motion should have been granted because the officers were not lawfully in place to see the evidence of methamphetamine manufacturing which led to the search warrant. He argues that their intrusion onto the property and his subsequent arrest were unlawful because they did not have a reasonable belief that he lived at that location. We review the facts supporting the denial of a motion to suppress for clear error and review legal conclusions de novo. United States v. Boyd, 180 F.3d 967, 975 (8th Cir. 1999). Absent exigent circumstances or consent, an arrest warrant does not justify entry into a third person's home to search for the subject of the arrest warrant. United States v.

Risse, 83 F.3d 212, 215 (8th Cir. 1996) (citing Steagold v. United States, 451 U.S. 204, 215-16 (1981)). A valid arrest warrant does, however, give police officers authority to enter the place where a suspect lives in order to execute the warrant. Risse, 83 F.3d at 215 (citing Payton v. New York, 445 U.S. 573, 602-03 (1980)). Since Davis was living at the trailer property, the warrant for his arrest permitted officers to execute the warrant at that location. Even had he not lived there, the officers would have had authority to cross the property to arrest him based on the consensual conversation with the woman at the house and the fact that they saw him standing outside of the trailer. Based on their observation of what was in plain view, they then contacted narcotics officers who used the information to seek a search warrant. The officers obtained and executed warrants and did not violate Davis' Fourth Amendment rights.

Accordingly, we affirm the judgment of the district court.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.