# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1353

_____

United States of America

*Plaintiff - Appellee*

v.

Travis Michael Collins

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 21, 2012
Filed: November 14, 2012

_____

Before LOKEN and MURPHY, Circuit Judges, and JACKSON,[*] District Judge.

_____

LOKEN, Circuit Judge.

Travis Collins conditionally pleaded guilty to being a felon in possession of a firearm and ammunition and now appeals the denial of his motion to suppress that evidence, discovered in a bag near where he was arrested by officers executing a

_____

[*]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri, sitting by designation.

parole violation arrest warrant. Collins argues the officers unlawfully entered a home and proceeded to the bedroom where he was staying without the valid consent of a third party, the dwelling's tenant, Krista Stoekel. Reviewing the district court's[1] finding of voluntary consent for clear error, we affirm. See United States v. Dupree, 202 F.3d 1046, 1049-50 (8th Cir. 2000) (standard of review).

Officers Lance Wignall and Kim Smith described the circumstances surrounding Collins's arrest at a suppression hearing. Wignall testified he was told by a reliable source that Collins was staying with someone at a residence in Des Moines. Wignall and other officers went to the home to execute an outstanding warrant for Collins's arrest. Wignall and another officer knocked on the front door several times. No one answered. They walked to the rear where a man came out of a back shed, said he owned the property, identified Stoekel as the house's tenant, and when shown a picture of Collins said he had been there recently. The officers returned to the front door and resumed knocking. After several minutes, Stoekel came to the door. Wignall said he needed to talk to Travis Collins and showed Stoekel a picture of Collins. She denied knowing him. Wignall said that he would like to step in to make sure Collins was not there. Stoekel responded, "No, I don't want you to do that." Wignall said, "I have reason to believe that he's here, and I would like to search your residence." Stoekel said, "No, I don't want that to happen."

Wignall then asked if he could step in and question Stoekel about Collins. Stoekel opened the door and said, "You can go no further than the living room." Inside, Wignall again showed Stoekel the picture of Collins. She again denied knowing him. Wignall asked Stoekel if she was the only one home. She said yes and repeated that Collins was not there. Wignall explained that the arrest warrant was for a parole violation and said he "didn't want her to be in trouble." Stoekel became

---

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

"rather emotional."   Wignall said he just needed to know if Collins was there. Stoekel again said, "no."   Wignall asked, "No, he's not here, or no, you don't know if he's here?"   Stoekel responded, "I don't know."   Wignall said, "your answer [to that question] is telling me . . . you have lied this whole time, and you know exactly who I'm talking about."   Stoekel then admitted knowing Collins.   Asked if he was in the house at that time, Stoekel said, "I don't know.   He may have come home last night."   Wignall asked which room Collins stayed in.   Stoekel "pointed upstairs." Wignall asked if she would mind if he made sure Collins was not in the residence "for my safety."   Stoekel said, "Fine."   Wignall and Smith proceeded upstairs, found Collins asleep in the bedroom, and arrested him.   During the arrest, the officers noticed an open bag next to Collins containing the firearm in question.

In denying the motion to suppress, the district court credited the testimony of Officer Wignall and found that Stoekel validly consented to the officers entering the home and later proceeding upstairs to Collins's bedroom.   The court upheld the seizure of the firearm because it was in plain view.   On appeal, Collins challenges only the validity of the search of Stoekel's home.

"[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603 (1980).   But before entering a third party's home to search for the subject of an arrest warrant, police must obtain a search warrant, absent exigent circumstances or the third party's consent.   Steagald v. United States, 451 U.S. 204, 214-16 (1981).   "However, Steagald does not prevent police entry if the arresting officers executing the arrest warrant at the third person's home have a *reasonable belief* that the suspect resides at the place to be entered and have reason to believe that the suspect is present at the time the warrant is executed." United States v. Powell, 379 F.3d 520, 523 (8th Cir. 2004) (emphasis in original, citations omitted).

The district court first found the officers had no reason to believe Collins was present when they arrived at the residence but Stoekel, after initially refusing, voluntarily gave her consent to enter the living room. On appeal, Collins concedes that Ms. Stoekel let Wignall in "solely to answer questions, saying, 'You can go no further than the living room.'" However, he argues, the government failed to prove enough about her age, education, physical condition, and experience with law enforcement to establish that she was capable of knowing and voluntary consent. This contention is without merit. The district court noted that Stoekel was old enough to lease the premises, engaged Wignall in a "reasoned conversation," and understood her legal rights sufficiently to initially refuse entry. Absent evidence to the contrary, these circumstances were sufficient for a reasonable police officer to conclude that her consent to the limited entry was voluntary. See United States v. Correa, 641 F.3d 961, 967 (8th Cir. 2011); United States v. Coney, 456 F.3d 850, 860 (8th Cir. 2006).

Emphasizing the "loud," "emotional," five-minute conversation in which Officer Wignall accused Stoekel of lying and impressed upon her the "seriousness of what was going on," Collins further argues that Stoekel's "consent" to search the upstairs -- manifested only by pointing upstairs and saying "fine" -- was "at best mere acquiescence to police authority occasioned by duress and coercion." In rejecting this contention, the district court explained:

> [A]s the conversation continued, Stoekel became increasingly concerned about the legal ramifications of her own conduct. This is especially true after Officer Wignall confronted her with a possible lie. Based on the totality of the circumstances, the Court concludes that it was reasonable for Officer Wignall to believe that Stoekel voluntarily changed her mind and consented to the search. That she may have reached this decision reluctantly does not change the *voluntariness* of her conduct and statement.

We agree.  Here, there was no "mere acquiescence" to a *false* claim of lawful authority, like the non-existent search warrant in <u>Bumper v. North Carolina</u>, 391 U.S. 543, 549 (1968), or the false claim that officers had probable cause in <u>United States v. Escobar</u>, 389 F.3d 781, 786 (8th Cir. 2004).  Rather, Officer Wignall explained to Stoekel that he was attempting to execute a valid warrant for Collins's arrest.  When she denied knowing Collins, contrary to what Wignall had been told by a reliable source and by Stoekel's landlord, he accurately warned "that I didn't want her to be in trouble" (harboring a fugitive from an arrest warrant is a crime, 18 U.S.C. § 1071).  While Stoekel was clearly induced to cooperate, there was no unreasonable coercion.  Thus, the finding that police officers could reasonably conclude that she voluntarily consented to their going upstairs was not clearly erroneous.  <u>See</u> <u>United States v. Pena-Ponce</u>, 588 F.3d 579, 584-85 (8th Cir. 2009) ("It's ok" sufficient indication of consent to search); <u>United States v. Adams</u>, 346 F.3d 1165, 1171 (8th Cir. 2003) (fear of arrest "is of little consequence"); <u>Dupree</u>, 202 F.3d at 1050 (uncoerced consent based on belief that search was inevitable is not constitutionally involuntary); <u>United States v. Duran</u>, 957 F.2d 499, 503 (7th Cir. 1992) ("that a consenting party is extremely upset at the time she consents is not dispositive"); <u>United States v. Yates</u>, 479 F. Supp. 2d 1212, 1217 (D. Kan. 2007), <u>appeal dismissed</u>, 363 Fed. App'x 670, 674 (10th Cir. 2010).

Moreover, we conclude the officers did not violate the Fourth Amendment when they went upstairs to look for Collins even if they did so without Stoekel's consent.  The officers had entered the home with her limited consent and obeyed her command that they not go beyond the living room during the five-minute conversation.  The landlord had just told the officers Collins had been there recently.  When Stoekel then admitted, "He may have come home last night," the officers had what the district court found lacking when they first arrived, "a *reasonable belief* that the suspect resides at the place to be entered and . . . reason to believe that the suspect is present at the time the warrant is executed."  <u>Powell</u>, 379 F.3d at 523 (citations omitted).  Accordingly, under <u>Payton v. New York</u>, the arrest warrant gave them the

-5-

limited authority to proceed to that portion of the dwelling where there was reason to believe Collins would be found.

The judgment of the district court is affirmed.

_____