# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-2296
_____

United States of America

*Plaintiff - Appellee*

v.

Michael Glover, also known as Born Taleem Bey

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 17, 2014
Filed: March 24, 2014
_____

Before WOLLMAN, BYE, and MELLOY, Circuit Judges.
_____

MELLOY, Circuit Judge.

A jury found Michael Glover guilty of possession of a firearm in furtherance of a drug trafficking crime, possession of heroin with intent to distribute, and being a felon in possession of a firearm. Before trial, Glover moved to suppress evidence that was collected at the time of his arrest. He contended that the evidence was obtained unconstitutionally because an officer pressed his face against a tinted

window to see inside a home. The district court[1] denied the motion and, following trial, sentenced Glover to 360 months' imprisonment. Glover appeals, arguing that the district court erred in denying his motion to suppress the evidence. Because the officer had a valid arrest warrant and a reasonable belief that Glover resided in the home, we need not address the Fourth Amendment challenge related to the tinted window. We affirm the judgment of the district court.

I.

On May 22, 2012 at 9:30 a.m., the St. Louis Metropolitan Police Department received an anonymous 911 call alerting them that Michael Glover was inside a residence located at 5347 Enright Avenue in St. Louis. The caller provided Glover's date of birth, which was verified, and notified officers that Glover was a wanted felon. Acting on the tip, police discovered Glover had active arrest warrants for probation violations, assault of a law enforcement officer, and possession of a firearm. The anonymous caller refused to give her name, but she left a callback number.

Officers proceeded to the Enright Avenue address. The property is a two-story, single family brick home, and the windows on the first floor are tinted. The home is located within a gated community with three other houses, and a code is required to gain access to the community. Officers obtained the code from the anonymous caller. A black Cadillac Escalade with a flat tire was parked in the home's driveway. Officers knocked on the front door, but no one answered. The officers then walked around the house, looking for any signs that Glover may be inside. They continued to knock on the door and call for Glover, but no one responded.

---

[1] The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Frederick R. Buckles, United States Magistrate Judge for the Eastern District of Missouri, now retired.

Officers then called back the anonymous caller and told her that Glover was either not inside the home or was not responding to their calls. The caller told police that Glover was still inside the home. She reported that Glover was watching the officers from an upstairs window and then described the actions of the officers in the preceding few minutes when the officers had walked around the house. She told the officers that Glover was planning his escape and that he was purchasing plane tickets to leave the area.

With this information, officers retreated from the home, set up surveillance along the perimeter of the residence, and called in the Violent Offender Unit. When the Violent Offender Unit arrived, officers in that unit provided a fugitive profile for Glover. The profile had been created in March 2012, following an encounter with Glover in September 2011.[2] The profile was compiled to assist officers in locating Glover and included information such as his photograph, active arrest warrants, and a description of the vehicles linked to him.

One of those vehicles was a black Cadillac Escalade, which seemed to match the vehicle parked in the driveway. In September 2011, Glover had led St. Louis County police on a chase in a black Cadillac Escalade during which Glover fired shots at the officers after fleeing from the vehicle on foot. The vehicle involved in the chase had dealer plates, and the vehicle in the driveway also had dealer plates. While the officers continued surveillance on the house, a car and pickup truck entered through the gate and arrived at the home. The people in the truck exited the vehicle and repaired the Escalade's flat tire. The driver of the car exited the vehicle and paced up and down the street while speaking to someone on a cell phone. After the tire was repaired, the people left in the car and pickup truck.

---

[2] The September 2011 incident involves Glover's conduct underlying Count I (Felon in Possession of a Firearm) of his conviction, which he does not appeal.

Fearing that Glover may try to flee now that the Escalade's tire had been repaired, two detectives from the Violent Offender Unit, Joseph Kuster and Marc Wasem,[3] approached the home. There is a sidewalk in front of the home and a walkway connecting the sidewalk to the front steps. A set of stairs leads to a porch that runs along the front of the house. Several feet to the left of the front door is the living room window, also located at the porch level. Wasem and Kuster identified themselves as police and called to Glover to surrender himself. They received no response. They continued to call for Glover for approximately ten minutes.

Officers then heard movement inside the house. While still on the front porch, Wasem walked to the living room window. The window was tinted, so Wasem pressed his face against the glass in order to see into the house. Upon pressing his face against the glass, Wasem observed Glover inside the living room. Wasem recognized Glover from photographs the officers had been shown earlier that day in Glover's fugitive profile. Glover had a gun in his hand and fled into the next room after observing Wasem looking in the window.

Wasem reported what he observed to a sergeant, who ordered the officers to breach the door. Officers broke open the front door and entered the home. The officers announced themselves as police and called for Glover to surrender. Glover was apprehended in a back bedroom, where officers arrested him. Officers then performed a protective sweep of the room, finding two assault rifles. Officers secured the premises and applied for a search warrant, which was granted. The resulting search turned up numerous guns, bulletproof vests, and a hidden dresser compartment containing $197,833 in cash, digital scales, and 1.7 kilograms of heroin.

---

[3] The officer's last name has been spelled several different ways throughout this litigation, including Wassam, Wassem, and Wasem.

## II.

Glover was charged with possession with intent to distribute more than one kilogram of heroin (Count II), possession of a firearm in furtherance of a drug trafficking crime (Count III), felon in possession of a firearm (Count IV), as well as a criminal forfeiture allegation for the $197,833 seized on May 22, 2012. Glover was also charged with an additional felon in possession of a firearm charge (Count I) for events that occurred on September 29, 2011.

Glover filed a motion to suppress the evidence found inside the home. A hearing was held before a magistrate judge, who recommended that Glover's motion be denied. The magistrate judge found that the active arrest warrants justified entry into the residence because officers had a reasonable belief that Glover was inside. On February 21, 2013, the district court adopted the magistrate's report and recommendation denying Glover's motion to suppress in its entirety. The matter proceeded to trial, and a jury convicted Glover of all four counts on February 27, 2013. On June 5, 2013, the district court sentenced Glover to 360 months' imprisonment. The $197,833 was also forfeited. Glover appeals the denial of his motion to suppress the evidence found inside the home on May 22, 2012.

## III.

On appeal, Glover asks this court to grant his motion to suppress, reverse his convictions on Counts II, III, and IV, and remand to the district court. Glover argues that Officer Wasem's act of pressing his face against the tinted windows to see into the house was an impermissible search that violated Glover's Fourth Amendment rights because the officers did not have a search warrant. We conclude that the officers' entry into the home was justified because they possessed multiple arrest warrants and reasonably believed that Glover resided at and was present in the house

before Officer Wasem observed Glover through the tinted window. As such, we need not address Glover's Fourth Amendment claim.

"We review the denial of a motion to suppress de novo but review underlying factual determinations for clear error, giving due weight to the inferences of the district court and law enforcement officials." United States v. Robbins, 682 F.3d 1111, 1115 (8th Cir. 2012) (internal quotation marks and citations omitted). Whether an officer's belief is reasonable is a "mixed question of fact and law," and "the ultimate conclusion . . . is subject to *de novo* review." United States v. Risse, 83 F.3d 212, 215 (8th Cir. 1996).

The Supreme Court has stated that, "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603 (1980). If officers wish to execute an arrest warrant not at the person's home, but at a different person's home, a different standard applies. Officers must either obtain a search warrant for the other person's home or have exigent circumstances or consent to enter without a search warrant. Steagald v. United States, 451 U.S. 204, 215–16 (1981); United States v. Davis, 288 F.3d 359, 362 (8th Cir. 2002). If officers are unsure if the subject of the arrest warrant resides in the home, our court allows "police entry if the arresting officers executing the arrest warrant at [a] third person's home have a *reasonable belief* that the suspect resides at the place to be entered and have reason to believe that the suspect is present at the time the warrant is executed." United States v. Powell, 379 F.3d 520, 523 (8th Cir. 2004); see United States v. Collins, 699 F.3d 1039, 1042 (8th Cir. 2012). Whether the officers had reasonable belief is based upon the "totality of the circumstances" known to the officers prior to entry. See United States v. Junkman, 160 F.3d 1191, 1193 (8th Cir. 1998).

Glover's counsel is careful to avoid resolving the factual question of whether Glover actually resided in the home, arguing only that the officers did not have enough information to make that determination prior to entering the home. The government, understandably, has consistently argued that Glover lived in the home and argues that if Glover did not live there, then he lacks standing to bring a Fourth Amendment claim. See United States v. Kaylor, 877 F.2d 658, 663 (8th Cir. 1989) ("[T]he police could have entered [the defendant's] own home without a search warrant to execute a warrant for his arrest if they had reason to believe he was inside. . . . [The defendant] cannot claim any greater Fourth Amendment protection in the [third party's] home than he possessed in his own home."). Ultimately, whether or not Glover actually resided at the Enright Avenue home is not material because based on the totality of the circumstances, enough evidence existed at the time the decision was made to enter to support the officers' reasonable belief that Glover resided at the home and was present in the home. See Risse, 83 F.3d at 216 ("[T]he officers' assessment need not in fact be correct; rather, they need only 'reasonably believe' that the suspect resides at the dwelling to be searched and is currently present at the dwelling.").

The 911 caller, while choosing to remain anonymous, provided consistently accurate and detailed information about Glover. The 911 caller knew Glover's name, the address where he could be located, his date of birth, and the fact that he had outstanding warrants for his arrest. Importantly, she knew the entrance gate code, which suggests she had a close relationship with Glover or the property. While "[a]nonymous tips as the bases for searches are treated with some mistrust by the courts," United States v. Anderson, 339 F.3d 720, 723 (8th Cir. 2003), "[i]f information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable," United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993). After the officers verified the caller's information and proceeded to the Enright Avenue

property, they observed a vehicle in the driveway that matched the description of one of the vehicles associated with Glover in his fugitive profile. When the officers contacted the anonymous caller using her call-back number, she said Glover had been watching the officers from inside the home and then described to the officers everything that they had been doing outside. This, in effect, verified to the officers that the anonymous caller had been communicating with someone inside the house, and the officers had reason to believe that person was Glover. In addition, officers had been looking for Glover for several months. Glover had no known address, and the officers had no indication that anyone instead of Glover resided at the Enright Avenue address.

Looking at all of the facts available to the officers, the "totality of the circumstances" demonstrate the officers' reasonable belief that Glover resided at the home and was present inside. See Junkman, 160 F.3d at 1193. The officers were therefore justified in entering to execute the arrest warrants. See United States v. Cantrell, 530 F.3d 684, 690 (8th Cir. 2008) (stating that if officers have an arrest warrant and a reasonable belief that the subject of the warrant resides at and is present within a home, then "officers [are] not required to obtain a search warrant before entering" the home to arrest the subject of the arrest warrant); see also United States v. Gorman, 314 F.3d 1105, 1113 (9th Cir. 2002) ("Reasonable belief . . . allows the officer, who has already been to the magistrate to secure an arrest warrant, to determine that the suspect is probably within certain premises without an additional trip to the magistrate and without exigent circumstances.") (emphasis and citations omitted). Once inside, officers observed the incriminating evidence in plain view, including guns and drugs, which provided probable cause to obtain a search warrant for the house and seize the evidence. We conclude that Glover's motion to suppress the evidence was properly denied.

IV.

Having concluded that the officers were justified in entering the home because they had a valid arrest warrant and reasonable belief that Glover was there based upon information obtained by the officers prior to looking inside the tinted window, we need not reach the question of whether the officer's act of pressing his face against the tinted front window to look inside the home amounted to an illegal search. Accordingly, we affirm the district court.

BYE, Circuit Judge, concurring in the result.

I write separately because I disagree with the majority's conclusion the information available to the officers supported a reasonable belief Glover resided at the Enright Avenue home. Through the anonymous tipster, the officers were aware of Glover's outstanding warrants, presence in the Enright Avenue home, and actions while in the home. The officers were also aware the tipster had the code for the gate to the community and that the vehicle in the driveway of the Enright Avenue home was associated with Glover. Nothing available to the officers indicated anything more than Glover being physically present inside the Enright Avenue home.

I, nonetheless, concur in the result. Evidence discovered after the arrest indicated Glover actually lived in the Enright Avenue home.[4] "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603 (1980). As Glover lived in the Enright Avenue home and the officers had a reasonable belief he was inside, the

---

[4]The search warrant application indicated that, after the arrest, Glover's wife told police she and Glover had lived at 5347 Enright for the year leading to May 22, 22, 2012. Appellant's Addendum 15.

active warrants for Glover's arrest permitted the officers to execute the warrants there. <u>United States v. Davis</u>, 288 F.3d 359, 362 (8th Cir. 2002). Even if we assume, for the sake of the argument, Glover did not reside in the Enright Avenue home but had standing to assert Fourth Amendment rights there, the result is the same for Glover. Glover "cannot claim any greater Fourth Amendment protection in [the Enright Avenue home] than he possessed in his own home." <u>United States v. Kaylor</u>, 877 F.2d 658, 663 (8th Cir. 1989) (citing <u>United States v. Clifford</u>, 664 F.2d 1090, 1092-93 (8th Cir. 1981)). I therefore concur in affirming the judgment of the district court.

———————————————————