**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 13-4906**

—————————

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

DANIEL JERONIMO-RODAS,

        Defendant - Appellant.

—————————

Appeal from the United States District Court for the District of South Carolina, at Florence. R. Bryan Harwell, District Judge. (4:13-cr-00153-RBH-2)

—————————

Submitted: June 16, 2014        Decided: June 25, 2014

—————————

Before SHEDD and THACKER, Circuit Judges, and HAMILTON, Senior Circuit Judge.

—————————

Affirmed by unpublished per curiam opinion.

—————————

Stuart M. Axelrod, AXELROD & ASSOCIATES, P.A., Myrtle Beach, South Carolina, for Appellant. William N. Nettles, United States Attorney, Robert F. Daley, Jr., Assistant United States Attorney, Columbia, South Carolina, for Appellee.

—————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Daniel Jeronimo-Rodas appeals from his conviction for possession of a firearm by an illegal alien. On appeal, he challenges the district court's denial of his motion to suppress, where he asserted that police officers' continued questioning of him at his residence after he denied the officers entry was unconstitutional. We affirm.

Victor Gomez, an agent with the Department of Homeland Security, along with two members of the Myrtle Beach Police Department's Gang Unit, knocked on Daniel Jeronimo-Rodas's trailer's front door at approximately 6:30 pm on February 15, 2013, in order to investigate a tip that illegal aliens in possession of firearms were on the premises. Jeronimo-Rodas opened the door. Gomez identified himself and informed Jeronimo-Rodas that the officers were conducting an investigation. Gomez asked if he could enter the residence, and Jeronimo-Rodas denied Gomez's request. Gomez then continued to question Jeronimo-Rodas concerning both his immigration status and his ownership of a vehicle parked near the residence.

Eventually, Jeronimo-Rodas retrieved documentation concerning the vehicle, along with a Mexican passport. After indicating to Gomez that he was a Mexican citizen, Jeronimo-Rodas stated that he was in the United States illegally. Gomez then placed Jeronimo-Rodas under arrest.

2

Subsequent to his arrest, Jeronimo-Rodas admitted that he had a firearm in the trailer, and he consented when Gomez asked to enter the premises to retrieve the firearm.

In reviewing a district court's decision on a motion to suppress, we review de novo the ultimate conclusion that the police did or did not have the requisite probable cause or reasonable suspicion, but all findings of historical fact and credibility determinations are reviewed deferentially, under the clear error standard.  See Ornelas v. United States, 517 U.S. 690, 699 (1996).  "A voluntary response to an officer's knock at the front door of a dwelling does not generally implicate the Fourth Amendment."  United States v. Cephas, 254 F.3d 488, 493 (4th Cir. 2001).  However, the Fourth Amendment is implicated "when officers gain visual or physical access to a room after an occupant opens the door not voluntarily, but in response to a demand under color of authority."  United States v. Mowatt, 513 F.3d 395, 400 (4th Cir. 2008) (internal quotation marks and alteration omitted), abrogated on other grounds by Kentucky v. King, 131 S. Ct. 1849 (2011); see Johnson v. United States, 333 U.S. 10, 13 (1948).

Jeronimo-Rodas particularly relies on the Supreme Court's decision in Johnson, where officers investigating a report of opium use in a hotel traced the opium to a particular room.  333 U.S. at 12.  Officers in Johnson knocked on the door

3

to the room and identified themselves as police, and after a slight delay, the defendant opened the door. Id. After one officer informed the defendant that he wanted to speak with her about the opium smell, the defendant stepped back and let the officers into the room, apparently without objection. Id. The Supreme Court held that the officers had obtained entry "demanded under color of office" and that the defendant had permitted entry into the room "in submission to authority rather than as an understanding and intentional waiver of a constitutional right." Id. at 13. According to Jeronimo-Rodas, Johnson created a bright-line rule that forbids further investigation or questioning once a suspect denies officers entry to his home. This bright-line rule would vitiate any consent given by Jeronimo-Rodas after the continued questioning.

However, the Supreme Court has ruled that consent is to be determined under the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). In determining whether consent was voluntary, courts examine the officer's conduct, the number of officers present, the time of the encounter, and the characteristics of the individual who was searched. See United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996). Additionally, whether the individual searched was informed of his right to decline the search is "highly relevant." United States v. Wilson, 895 F.2d 168, 172 (4th Cir.

4

1990).  The voluntariness of consent is a factual finding reviewed for clear error.  Lattimore, 87 F.3d at 651.

Here, the district court explicitly found Gomez to be a credible witness and carefully considered the totality of the circumstances: (1) the entire encounter took a matter of minutes and occurred on Jeronimo-Rodas's own property; (2) Gomez had reasonable suspicion to interview Jeronimo-Rodas, based upon a reliable confidential informant; and (3) once Jeronimo-Rodas admitted he was an illegal alien, Gomez read him his rights prior to his admissions regarding the gun and prior to his consent to search.  Gomez testified that Jeronimo-Rodas was cooperative and that he even walked officers to his bedroom and pointed out the handgun.  Unlike in Johnson, the officers did not "demand" that Jeronimo-Rodas open the door or cooperate.  Moreover, no guns were drawn; Jeronimo-Rodas was not ordered to the ground; he was informed of his Miranda rights; and Jeronimo-Rodas clearly understood his right to refuse consent, as he had previously declined consent.

Thus, we reject Jeronimo-Rodas's construction of Johnson.  See Florida v. Bostick, 501 U.S. 429, 436-37 (1991) (noting that Fourth Amendment seizure occurs only if "a reasonable person would [not] feel free to decline the officers' requests or otherwise terminate the encounter" and that seizure which does not occur "when police ask questions of an individual

5

. . . so long as the officers do not convey a message that compliance with their requests is required"); <u>United States v. Collins</u>, 699 F.3d 1039, 1042 (8th Cir. 2012) (finding that it was reasonable to believe defendant "voluntarily changed her mind and consented to the search" after police induced her to cooperate); <u>United States v. Alexander</u>, 573 F.3d 465, 477-78 (7th Cir. 2009) (defendant initially refused to consent then later voluntarily agreed to consent).  Taking the evidence in the light most favorable to the Government under the totality of the circumstances, we find that the district court did not err in determining that Jeronimo-Rodas's consent was voluntarily given and that the agents were not required to withdraw upon Jeronimo-Rodas's initial denial.  Accordingly, we affirm the district court's judgment.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>